OF

# THE SUPREME COURT

OF THE

## STATE OF ILLINOIS,

APRIL TERM, 1859, AT OTTAWA.

---

MINERAL POINT RAILROAD COMPANY, Plaintiff in Error, *v.* JOHN M. KEEP, Defendant in Error.

### ERROR TO JO DAVIESS.

If railroad companies, having their officers and offices, do business and have agents and property in this State, service of process may be made upon such agents in this State, in the same manner that it may be on agents of local corporations.

If the fact of the agency is denied, the return of the officer as to that is not conclusive, this should be put in issue by a plea in abatement.

A party who submits himself to the jurisdiction of a court by pleading, cannot afterwards complain of the irregularity of the service of process. He may give jurisdiction without service of process.

An affidavit before a notary of another State, if he certified that he is authorized to administer oaths, will authorize the issuing of an attachment in aid of a summons.

Corporations are included in the word " person " in the attachment law.

Where an issue of fact is made up on a plea to the jurisdiction, a judgment of *respondeat ouster* is a favor to the party; the judgment *quod recuperet,* being authorized.

A plea to the jurisdiction, should be pleaded in person, not by attorney.

A court has discretion to allow items of set-off, that have been withdrawn, to be again filed.

The written memoranda, taken at the time a deceased witness testified, in a suit between the same parties, may be read in evidence. The correctness of such memoranda may be disputed, and the jury must pass upon them.

If money is advanced to a sub-contractor, the principal contractor will only be held for the amount advanced by his authority.

THIS was an action of debt upon two contracts, for building the road of the defendant below, plaintiff here; also for war-

2

rants drawn upon the treasurer of the company, in favor of plaintiff below. The declaration also contained the common counts.

The suit was commenced by summons, returned as follows, 2nd February: " Executed the within by delivering a copy of the same to J. R. Booth, agent, and A. W. Dexter, conductor of said Mineral Point R. R. Co." Amended so as to read, " Executed the within writ by delivering a true and correct copy of the same to J. R. Booth, agent, and J. W. Dexter, conductor of said Mineral Point R. R. Co., this 2d day of Feb. 1857, the President of said company not residing in the State."

On 5th February, affidavit and bond for an attachment was filed, and an attachment was sued out in aid, levied 7th February, on three locomotives, six box cars, and two passenger cars, three rock cars, one lathe and shop, and left copy of attachment with Mr. Booth, agent of said road. No publication of notice was made.

The amended affidavit states that the railroad company is a corporation chartered, located, and doing business in Wisconsin, and under the laws of said State, and keeps its office or place of business in Wisconsin, and has no office or place of business in the State of Illinois, and is a resident of Wisconsin and not of Illinois, and that it has property in Illinois which it is about to remove out of the State, and that in 1855 it became a corporation by act of Illinois, by act of 15th Feb., 1855, and that this attachment is in aid of his action of debt. Affidavit sworn to before notary public, in Wisconsin. There was a motion to quash the amended affidavit, because not sworn to before any person authorized to administer oaths by the laws of Illinois. Motion was overruled.

There was a plea in abatement to the affidavit and writ of attachment which sets out that defendant below had a large amount of personal property in the county of Jo Daviess, which it was not then about to remove from the State of Illinois, to the injury of Jno. M. Keep, as in said affidavit alleged.

A demurrer to this plea was sustained.

Defendant below then moved to set aside sheriff's return on the summons, and read affidavits of Dexter, Booth, and Johnson, who state that Dexter and Booth were not agents, conductors, or in any way employees of the company at the date of the service of summons, nor at any time before or since ; whereupon court ruled that the testimony was inadmissible because the sheriff's return could not be contradicted, and that plaintiff was duly summoned and in court.

Plaintiff filed a plea to the jurisdiction, wherein it is set out

that the causes of action accrued to defendant in Wisconsin and not elsewhere.

That plaintiff and defendant are non-residents of Illinois, and that both reside in Wisconsin, and plaintiff is a corporation created and existing under the laws of Wisconsin, and keeps its office and place of business there, and has none in Illinois.

That contract and cause of action sued for were created and to be performed in Wisconsin, where both parties then did and still do reside. Properly sworn to.

On leave, defendant filed two replications to above plea.

1st. That plaintiff is a body corporate in Illinois, and existing, doing business, and having an office in said State, under the act of February 15, 1855.

2nd. That under the act of 15th February, 1855, plaintiff built and is now operating a railroad from the dividing line of the States of Wisconsin and Illinois, to the depot of the Illinois Central Railroad at Warren, in Jo Daviess county, and was, at the date of the suit, transporting persons and property upon it.

Demurrer, general and special, to these replications, overruled.

There was a rejoinder to replications, and trial, and verdict for defendant.

Motion for a new trial was overruled and excepted to, with judgment of *respondeat ouster*.

David B. Martin and Lucius D. Coman file an interpleader, and state,

That the property attached belongs to them, as mortgagees, by mortgage dated 1st January, 1856, recorded 25th April, 1856, of all the road bed, superstructure and equipment, for securing bonds and coupons for $320,000.

Issue was joined on this plea, and trial and verdict for interpleaders and judgment for them, and that sheriff deliver up the property attached to said interpleaders.

The court modified the judgment by vacating that part which required the sheriff to deliver up the property to them.

Defendant below, upon affidavit, moved to set aside this last order, and for an order to the sheriff to return the property attached, to the interpleaders, which the court overruled.

Defendant below then filed the following pleas:

1st. General issue.

2nd. Set-off, and account filed under it.

3rd. *Non est factum*, without oath.

4th. Non-performance of condition of contracts by plaintiff.

5th. *Non damnificatus*.

6th. Payment.

7th. Performance by defendant of all the conditions of the contracts.

8th. Non-performance by defendant of his contract to build road, viz.: did not construct the road in time and in a workman-like manner.

General replication to each plea.

Defendant withdrew the items of his set-off for $5,000 for subscription to stock of company by plaintiff.

Before the cause came on for trial, the defendant moved for leave to re-file the foregoing item, having since its withdrawal procured evidence to establish it. Which was allowed.

The contract between the plaintiff and defendant for the construction of the road, dated 6th September, 1854, and the accompanying estimates and specifications, were read.

Plaintiff offered to read his own letter of the notice of his intention to abandon the contract in evidence. Defendant objected. Overruled, and the following letter was read:

*Warren, December* 15, 1856.

Hon. PARLEY EATON, President, etc.

*Dr. Sir:*—On account of the failure of the Mineral Point Railroad Company to pay my estimates for the last three months, and their total failure to pay me anything on my estimate due the 10th inst., I am compelled to declare the contract between me and the company, dated Sept. 6th, 1855, forfeited, for such failure on the part of the company. I have carried along the work and raised the money as long as I can do it. I did intend to go through even if I had to advance all the estimates, but find that I cannot without the company pay estimates, and therefore for such default, am compelled to declare the contract forfeited. The work on section 31 will be suspended entirely. My sub-contractors on other parts of the road will finish their contracts under me, or I shall fulfill my contracts with them. But it must be understood that no future work is done under my contract aforesaid of Sept. 6, 1855. The company can take possession of the whole road if they desire it, and I will settle with my sub-contractors, or they can let them finish their jobs, just as they choose. If they go on and finish, as I am willing they should do, I shall pay them as I contracted. I shall claim of the company what the work is worth. I take this step very reluctantly, gentlemen, I can assure you, but I am compelled to do it. I am desirous of making an amicable settlement with the company, if it can be done, and will endeavor to do what is right. I shall be at Janesville next week, and I hope to hear from you and perhaps see you. Judge Eaton and Mr. Temple could undoubtedly arrange the whole matter with me satisfactorily.

Yours truly, J M. KEEP.

*M. H. Carpenter*, sworn. Says he is attorney for defendant, and was such on a former trial of this case; that he heard the testimony of Charles Temple, a witness for defendant on that trial, since deceased. That he took down the testimony of said Temple at the time, and then produced the minutes so made by him on that trial, and that he believed the minutes so taken by him were correct. That he could not state his testimony min-

utely from his recollection, but must rely upon his minutes taken at the time.

He then read from the minutes so kept and produced by him.

To the reading of the whole testimony from the minutes, the plaintiff objected.

The defendant then called and examined several witnesses.

The defendant below offered the receipt of T. C. Holcomb, for $1,007.12, and thereupon examined *W. T. Henry* in explanation thereof, who stated,—

That Holcomb was a sub-contractor under defendant. Keep ordered me to take his receipts and give him vouchers for them. This receipt was for money advanced, less fifteen per cent. Defendant said I might advance to within the amount due from defendant to the sub-contractor. We had an account of Holcomb's work. Engineer reported the work of each section distinct. Defendant authorized us to pay Holcomb, so we did not exceed what was due defendant from him to Holcomb.

The Holcomb order, composed of items amounting to $1,007.12, was read in evidence.

The court, at the instance of defendant, gave the following instruction, among others:

"4th. If the jury believe, from the evidence, that the defendant made advances to one Holcomb, and seeks to charge the defendant with such advances, then the jury should reject the testimony, unless the plaintiff has shown further, by the evidence, that the defendant was indebted to said Holcomb, at the time of making such advances, to an amount equal to the money advanced, if such was the limit of the authority to plaintiff to make such advances."

At instance of plaintiff, the court instructed the jury as follows, among others, viz.:

"4th. If the jury believe, from the evidence, that advances were made to defendant by the company, and, at the time the advances were made, it was the agreement between the defendant and the company, that the same were to be taken out of any subsequent estimates due him, and that estimates were made defendant afterwards, and the company elected to take the estimates out of such estimates, the retaining payment out of such estimates by the company, is not such a non-performance and default on the part of the company, as would authorize defendant to declare the contract terminated."

"5th. That under the contract sued on this cause, the plaintiff was authorized to retain fifteen per cent., which was not demandable until the completion of the contract; and if the jury believe, from the evidence, that the defendant abandoned the work voluntarily, and did not complete the contract, with-

out fault on the part of the company, then the defendant cannot recover the retained per cent. in an action based upon the contract, and as to that item the jury should find for the plaintiff."

"7th. The covenant in this contract to pay at the end of each month for the work done during that month, was dependent upon the progress of the work, so far as respects the amount to be paid, but was not dependent on the covenant to finish the work by a certain day ; these are independent covenants ; and if the defendant covenanted to complete the work, and refused and neglected to complete the same, he cannot recover for work not done by him."

" 9th. The defendant cannot recover under the contract for any more work than was done by him up to the time he rescinded it." ·

The jury found a verdict for the defendant for the sum of $10,749.38 debt, and $982.37 damages.

Plaintiff moved for a new trial, which was overruled, and judgment rendered for the amount, to all which the plaintiff excepted.

The following errors are assigned :

1st. The court erred in overruling plaintiff's motion to quash the writ of attachment for want of a sufficient affidavit.

2nd. In sustaining a writ of attachment against a domestic corporation created by the laws of this State.

3rd. In sustaining the defendant's demurrer to the plaintiff's plea in abatement to the facts set forth in the affidavit for attachment.

4th. The court erred in entertaining jurisdiction of the cause under the summons ; because there was no service on any person in the employ of, or connected with the company.

5th. In striking from the files the affidavits of the persons on whom the pretended service was made.

6th. The affidavit does not contradict, but explains the return of the sheriff, and should have been received by the court.

8th. In requiring the plaintiff to plead to the action, and in holding the service sufficient.

9th. In taking jurisdiction of the cause, there being no notice under the attachment or service under the summons.

10th. In submitting the question of the jurisdiction of the court to be tried by, and passed on by, the jury.

11th. In overruling the motion for a new trial on the issue raised by the plea to the jurisdiction submitted to the jury.

12th. In overruling the motion of the plaintiff to re-file the account filed with the pleas, and withdrawn on former trial.

15th. In permitting Carpenter, defendant's attorney, to read

from his minutes what the witness, Temple, had testified on a former trial.

16th. In giving the instructions asked for by the defendant.

18th. In overruling the plaintiff's motion for a new trial, and in entering a judgment in the cause in the form entered.

19th. In changing the order first made, and in overruling the motion of the interpleaders for a return of the property from the sheriff.

W. B. SCATES, and M. Y. JOHNSON, for Plaintiff in Error.

LELAND & LELAND, for Defendant in Error.

BREESE, J. Several objections are made by the appellants to the proceedings in this cause, some of which, deemed the most important, we will notice.

The first is, that there was no service of process in the original suit, and that the court erred in requiring the defendants below, to make any further appearance in the cause than to object to the service.

The service was as follows : " Executed the within writ by delivering a true and correct copy of the same to J. R. Booth, agent, and J. W. Dexter, conductor of said Mineral Point Railroad Co., this 2nd February, 1857, the president of said company not residing in this State."

It is provided by an act amendatory of chapter 83, R. S. 1845, passed in 1853, (Scates' Comp. 243) : " In all cases where suit has been, or may hereafter be brought against any incorporated company, process shall be served upon the president of such company, if he reside in the county in which suit is brought, and if such president be absent from the county, or does not reside in the county, then the summons shall be served by the proper officer by leaving a copy thereof with any clerk, cashier, secretary, engineer, conductor, or any agent of such company found in the county, at least five days before the trial, if suit be brought before a justice of the peace, and at least ten days, when suit is brought in the Circuit Court."

This act does not seem to be confined to domestic corporations, in its terms, nor do we think it should be, when the purpose of the act is considered. It seems to us, it was designed for just such cases as the present, where railroad companies, having their offices and officers in foreign States, do their business, have their agents and their property in this State. It is a convenient way provided, to get service upon them, so as to subject their property to their contracts, and it is a proper consequence of the provisions of this act that they should be deemed

found wherever one of their officers or agents, such as specified in the act, may happen to be. And this we understand is every day's practice, not only with the Illinois Central, but with all other railroads in the State. The practice under a law, is sometimes good evidence of what the law is, and really means.

It is urged in addition, that the return of the officer is not, and ought not to be, conclusive of the fact of agency, and that the affidavits to show the true character and relative position of the supposed agent and conductor, Booth and Dexter, should have been admitted—that the return can only be conclusive of the fact and the time of the delivery of the copy of the summons to these supposed agents, but not to their character or supposed relation to or connection with the company.

There is great force in this objection, and if the appellant had pleaded in abatement of the writ and not to the merits of the action, it might have availed it.

The object of process being to compel the appearance of a party, if he does appear on void process or without service of process, and pleads to the merits, he can never urge the want of proper process, or want of service or improper service, as grounds for the reversal of a regular judgment rendered against him, the court having jurisdiction of the subject matter. He submits his person to the jurisdiction by his plea. The court did not require the appellants to plead to issue—it was their own voluntary act.

We are not inclined to think the return of the officer, as to the fact of agency, when a corporation is sued, should be conclusive. Great injustice and ruin to incorporated companies might be the consequence, had the officer the undisputed power to select any person he might choose, as the agent of a company sued, and serve the process upon him. That he was the agent must be held to be a fact open to the country. An officer's return is not conclusive of all the facts stated in it, as where he returns upon a *fi. fa.*, "money made and paid to the plaintiff," the payment is a fact which may be contested. So in this case, the fact that J. R. Booth was the agent and Dexter the conductor, is not conclusively established by the return; it can be contested. Our statute authorizing service of process on an agent or conductor, is an innovation upon the ancient practice, and no greater force and effect should be given to it than is absolutely necessary. When a party sues an incorporated company whose president and whose place of doing business is out of the county where suit is brought, and causes his process to be served on one whom he chooses to consider the agent of the company, it is no hardship to require him to prove such person was the agent. We think, therefore, that the fact of agency could have

been put in issue by plea in abatement of the writ, the defendants appearing for that purpose only. By such practice, no injustice can be done. If the issue is found against the company, and the fact of agency established, leave will always be given to plead to the merits.

The motion made by appellants, was not in the nature of such a plea, for no issue could be made up. A most important fact was to be investigated and decided, and it could not be well tried upon affidavits, and without an issue formed.

They have pleaded to the merits, and that cures all antecedent irregularities of process—defective service, or an entire want of service.

As ancillary to this action commenced by original summons, the plaintiff below, on an affidavit made before a notary public of Wisconsin, attested by his notarial seal, obtained an attachment which was levied on one locomotive, and several cars, as the property of the plaintiffs in error, and a copy of the writ and levy " left with Mr. Booth, agent of said road." No notice by publication or otherwise was given, other than the service of the original summons in the mode above stated.

A motion was made to quash the affidavit on the ground that it was not made before any officer authorized by the laws of this State to administer oaths. The motion was overruled, and we think correctly, for the notary states in his certificate, that he is authorized by the laws of Wisconsin to administer oaths, and our statute, section 32, chapter 9, R. S. 1845 (Scates' Comp. 235), provides that the affidavit may be sworn to before any officer authorized by the laws of this State to administer oaths, or by any officer of any state, territory or district of the United States, the fact that the person administering such oath is duly authorized, to be proved in the same manner as in the acknowledgment and authentication of deeds. Now a deed executed in a foreign State, and acknowledged before a notary public and attested by his notarial seal, is a sufficient authentication of the acknowledgment, without any other evidence. So would proof before him by the subscribing witness be sufficient. It is sufficient, that the notary has power by the law of his domicil, to take affidavits, and such affidavits can be used in the courts of this State.

A plea in abatement was then filed to the affidavit and writ of attachment, which was demurred to and the demurrer properly sustained, because the plea did not state, that " the large amount of personal property which the company had in Jo Daviess county, was sufficient to pay the plaintiff's debt."

These proceedings were prior to the attack upon the sheriff's return by motion to set it aside. After this motion was over-

ruled, plaintiff in error filed a plea to the jurisdiction of the court, setting out that the causes of action accrued to the plaintiff below in Wisconsin and not elsewhere, and that both parties are non-residents of this State, they residing in Wisconsin, and that plaintiffs in error are a corporation created and existing under the laws of Wisconsin and keeps its office and place of business there, having none in this State, and that the contract and causes of action sued for, were created and to be performed in Wisconsin, where both parties then did and still do reside.

To this plea the plaintiff below, by leave of the court filed two replications. First, averring that defendants below are a body corporate in this State and existing, doing business, and having an office in this State under the act of February 15, 1855, and second, that under said act, the defendants below, built and are now operating a railroad from the dividing line of the States of Wisconsin and Illinois to the depot of the Illinois Central Railroad at Warren in Jo Daviess county, and was, at the time of the commencement of this suit, transporting persons and property upon it.

To the first of these replications there was a demurrer, which was sustained, and amendment made and a rejoinder put in. The issue thus formed was tried and found for the plaintiff below, and judgment of *respondeat ouster*. Whereupon the defendants filed the plea of the general issue and seven special pleas.

From the views we have already presented, it may be inferred that the question of jurisdiction was properly determined against the plaintiffs in error. There can be no question that they and their property were amenable to the attachment process in aid, as this was, of the suit at law commenced by summons served upon their agent. Though incorporated companies are not expressly named in the attachment act, by force of section 9, chapter 90, (Scates' Comp. 722), the word "person" shall be deemed to extend to and include bodies politic and corporate, as well as individuals. The word "person" therefore in the first section of the attachment law (Scates' Comp. 228) includes bodies politic and corporate as well foreign as domestic.

If it be a foreign corporation, having property within the jurisdiction of this State, it must be regarded as a non-resident debtor and amenable to this process. If it be a domestic corporation, and it is alleged that it has property within this State and is about to remove it without this jurisdiction to the injury of the creditor, a case is made for the issuing of the writ of attachment.

We can perceive no hardship or injury likely to result from so holding. Corporations have vast powers and privileges, suf-

ficient it is supposed, to enable them to carry out the objects for which they are created. It would be neither just nor wise, to bestow upon them the additional immunity of exemption from the observance of their contracts, or to deny to the people, the usual facilities for collecting their debts against them. Nothing in the issues made up on the plea to the jurisdiction is shown, to deprive the court below of jurisdiction.

The judgment on this plea of respondeat ouster may be considered, as a favor extended by the court to the plaintiffs in error, for ordinarily, the judgment would have been *quod recuperet*, an issue of fact having been joined upon the replication and found for the plaintiff. The same jury that tried this issue might have assessed the damages. 1 Ch. Pl. 464. The facts alleged in the plea to the jurisdiction and the issue upon it, were properly tried by the jury. But it may be observed, this plea to the jurisdiction was not properly pleaded, and on motion would have been stricken from the file. It was pleaded by attorney. The rule is it must be pleaded in person, and not by attorney, because the latter would admit the jurisdiction of the court. 1 Ch. Pl. 444.

What we have said disposes of the eleven errors first assigned.

As to the twelfth error, it was clearly a matter of discretion in the court below to permit the defendants to file anew items of set-off, which they had once filed and withdrawn. A plea of set-off is in the nature of a cross action, and items of set-off may be regarded as counts in a declaration, and it would be unreasonable to permit a party to withdraw, at one term some of his causes of action, and reinstate them at another, when the opposite party might not be prepared to meet them. It was, however, in the discretion of the court to allow it, or refuse, and its exercise cannot be called in question.

As to the objection that a witness was permitted to read from written minutes what a former witness, then deceased, had testified, the rule is, and we believe has never been departed from, that a witness may refresh his recollection by referring to his minutes or memoranda made by him, but cannot speak from them, or give them in evidence to the jury—he must speak from his own recollection of the substance of the testimony. *Iglehart* v. *Jernegan*, 16 Ill. R. 521. The rule in England is, that the very words of the deceased witness must be given.

In this case, the record states that the plaintiff " offered what was testified by Charles Temple on a former trial between the same parties in the same case, the said Temple having been then produced and sworn as a witness on the part of the plaintiff, since which time he had died. The plaintiff offered to prove

his testimony by M. H. Carpenter, one of the plaintiff's counsel on the former trial, to which the defendant objected. The court overruled the objection and Carpenter was sworn. Now it will be seen here, that the objection was general, to his being sworn at all, and there was no exception alleged or taken to the decision of the court permitting him to testify. The witness being sworn, testified that he was present at the former trial and heard Temple give in his testimony—that he took it down at the time, acting as counsel for the plaintiff, (minutes here produced,) and that he believed the minutes so taken by him were correct—that he could not state his testimony minutely, from his recollection, but must rely upon his minutes taken at the time and which he believed were correct, and then read from the minutes of the testimony of the deceased witness the following evidence, to wit: "

No objection was made to this mode of giving the testimony of the deceased witness to the jury, nor does it appear from the record, that the witness had not a recollection of the testimony when it was refreshed by reading the minutes.

This court has laid down no rule as to the degree of connection required between notes and memory, and we are at liberty to adopt such an one as may be reasonable and just. Courts generally have said, that the judge's notes of the testimony, are not *per se*, evidence. To make them of any use, he must resort to them merely as a memorandum to refresh his memory, the same as any other witness. Here the minutes of the evidence taken by the counsel were not offered as evidence *per se*—he was sworn to their correctness and read from them without objection. What better evidence of the testimony of a deceased witness could there be, than correct notes of it taken at the time? It fulfills one of the most important requirements of the law, that the best evidence shall be produced in the power of the party to produce. If not truly taken and reported, it is open to attack and exposure from the other side, whose counsel may also have taken full notes, or the judge who tried the cause, may be sworn, and his notes used for such purpose, or any one or more of the jurors or bystanders who heard the case, may be examined as to their fidelity and correctness. It seems to us, that such minutes sworn to be correct are far better and more satisfactory as evidence, than the imperfect and fleeting recollection of any man could possibly be, and we do not feel the force of a reason which shall require us to reject a higher for an inferior grade of testimony. It must be recollected, that the witness detailing the testimony of the deceased, is not called to testify to any fact in the case, but only to the fact as to what the deceased witness swore, and if he swears

that he made full notes of his testimony at the time, and that they are correct, we see no reason why he should not read them to the jury, as the best evidence of the fact to which he is called to depose.

In the case of the *Mayor of Doncaster* v. *Day*, 3 Taunton, 261, Mansfield, C. J., said, what the former witness swore may be given in evidence, either from the judge's notes, or from notes that have been taken by any other person, who will swear to their accuracy—or the former evidence may be proved by any person who will swear, from his memory, to its having been given.

In *Miles* v. *O'Hara*, 4 Binney, 108, it was held that a copy of the judge's notes of the testimony of a deceased witness were not evidence, though certified by him to be correct, but they would be, if with his oath.

In *Cornell et al.* v. *Green, Adm'r*, 10 Serg. and Rawle, 14, after the plaintiff had opened his rebutting evidence, he offered Mr. Fisher who was of counsel in the cause, to prove what had been sworn on a former trial by a witness since deceased. On being examined as to the state of his recollection, he testified that from having been consulted before the suit was instituted, and having directed to be done what the witness in the former trial swore was done, as well from frequently having recurred to his notes of the witness' testimony, as from conversations with him before the trial came on, he had a perfect recollection of what the witness swore—that he would not, however, pretend to say without a previous knowledge of all these facts, what the witness did or did not swear—that he is in the habit of taking down the very words of a witness, and not the substance of his testimony ; and that to the best of his knowledge, his notes contain every word said by the witness on the occasion ; and added, that conversant as he was with the cause, without frequently recurring to his notes, he would not undertake to state every word said by the witness, but that the material part of what he had said, he could state without recurring to his notes. The court held he was properly admitted to testify, taking strong grounds against the unreasonableness of the old English rule, requiring the very words to be given. In the course of the opinion, Gibson, J., says: " It seems, however, singular that instead of trusting to Mr. Fisher's recollection, the plaintiff did not offer his *notes* in evidence, against which, when properly authenticated, there could be no sort of objection."

To the same effect is *Chess* v. *Chess*, 17 Serg. and Rawle, 409. In this case, the court say, if the notes on one side are not fully trusted, what more obvious correction than to have the notes on the other side produced and sworn to, if they can be

Mineral Point Railroad Co. *v.* Keep.

sworn to, or the notes of the judge, or recourse had to the memory of jurors or other persons present, if it shall be insisted that memory is safer than writing. In *Ballinger* v. *Barnes*, 3 Devereux (N. C.) 460, the course here recommended was pursued, the result of examinations on both sides going to the jury. This practice was approved by the court.

We think, written notes made by the counsel for one of the parties in the cause, and sworn to be correct, are more reliable than testimony resting in memory merely, tinged, as those notes may be, by the prejudices of the counsel taking them, being open to correction by the judge's notes, or those of others.

As to the objection that the letter of the plaintiff below to the president of the company, was permitted to go in evidence, it will be seen by the second instruction asked by the defendants below, and given by the court, the jury were specially instructed to disregard all that part of it, which alleged the non-payment of the monthly estimates, as the reason for abandoning the contract. For all other purposes, the letter was admissible as notice.

The fourth instruction given on behalf of plaintiff below, states the law accurately on the point involved in it. The advances by the company to Holcomb, one of the sub-contractors under the plaintiff, could only be justified on the ground that the plaintiff was indebted to Holcomb at the time of making the advances, equal in amount to the money advanced. This limit of the authority to the company to make the advances, might well be imposed by the plaintiff, and it was for the jury to say if it was imposed.

As to the rights of the parties who interpleaded, it is sufficient to say, they have not brought them before this court—they are not parties, in any sense, to this writ of error.

The finding of the jury was after a full hearing of the evidence, the whole question of abandonment and the causes therefor being left to them, and we cannot say that they have so mistaken or disregarded the evidence, as to do injustice to the plaintiffs in error. The main ground of their verdict, may be found in the fact that the reserved fifteen per cent. was allowed the plaintiff, which of itself would amount to near ten thousand dollars.

Perceiving no error in the record the judgment must be affirmed.

*Judgment affirmed.*