The Hannibal and St. Joseph Railroad Company

*v.*

. J. C. Crane, for use of Chauncey Ladd.

*Filed at Springfield March 28, 1882.*

1. Garnishment—*foreign corporation liable.* A foreign corporation doing business and having property in this State is liable to garnishment, the same as a domestic corporation, and service of process may rightfully be made on its agent in this State.

2. Same—*service on foreign corporations.* Foreign corporations doing business in this State are liable to be sued, the same as a domestic corporation or citizen, and process may be served upon its agent in this State, and the word "process" in the Practice act embraces process of every kind, including garnishee process.

3. Same—*costs.* The act giving costs to the successful party has application to garnishee proceedings; but the garnishee should never be required to pay costs out of his own means, unless he resorts to unnecessary and protracted litigation. Judgment for costs, when the court has jurisdiction, binds the principal debtor, and is a part of the recovery.

4. Common law—*how far adopted.* The courts of this State are not required by our statute adopting the common law of England, to enforce local customs of that realm, as it does not prescribe local customs and statutes as a rule of action in this State. On the contrary, they are excluded.

5. Attachments—*laws relating to, liberally construed.* Our statute relating to attachments, from its provisions and the spirit of the whole act, is entitled to, and should receive, a liberal, and not a strict construction.

6. Action—*whether local—and of a prior demand.* A debt due from a foreign corporation to one of its employés residing in the same State, pay-

able by its treasurer, is not local, nor is the action to recover on the same a local action, to be brought in such State. Neither is any demand necessary in this State to authorize an action in our courts for its recovery.

Appeal from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Adams county; the Hon. John H. Williams, Judge, presiding.

Messrs. Marsh & McFadon, for the appellant:

A non-resident is liable to garnishment only in three cases: First, where, when garnisheed, he has in the State property of the principal defendant in his hands; second, where, when garnisheed, he is bound to pay the principal defendant money in such other State; or third, where, when garnisheed, he is bound to deliver the principal defendant goods at some particular place in such State. Drake on Attachments, sec. 474; *Jones* v. *Cummings*, 6 N. H. 498.

When the only thing reached by the process is a debt due from the garnishee to the principal defendant, such debt is regarded local, having a *situs* where the garnishee resides, and is not the subject of garnishment in another and different State. *Smith* v. *B. C. and M. R. R. Co.* 33 N. H. 342; *Sawyer* v. *Thompson*, 4 Foster, 510; *Tingley* v. *Bateman*, 10 Mass. 346; *Ray* v. *Underwood*, 3 Pick. 302; *Green* v. *Farmers' Bank*, 25 Conn. 452; *Bates* v. *New Orleans R. R. Co.* 4 Abb. 72; *Willett* v. *Equitable Ins. Co.* 10 id. 193. See, also, *Hart* v. *Anthony*, 15 Pick. 445; *Gold et al.* v. *Housatonic R. R. Co.* 1 Gray, 425; *Taft & Co.* v. *Mills & Co.* 5 R. I. 393.

The court should not have rendered judgment against the garnishee for costs. By the statute the costs are made a matter of discretion. Rev. Stat. 1874, chap. 62, sec. 27.

Messrs. Emmons & Wells, for the appellee:

Foreign corporations doing business in this State must submit to such terms as are imposed on them by our law, and that subjects them to the same restrictions, liabilities

and duties as domestic corporations.    Rev. Stat. 1874, chap. 32, sec. 26; *Ducat* v. *City of Chicago*, 48 Ill. 172; *Mineral Point R. R. Co.* v. *Keep*, 22 id. 9; *Midland Pacific Ry. Co.* v. *McDermid*, 91 id. 170.

That domestic corporations are liable to garnishment, see *Mineral Point R. R. Co.* v. *Barron*, 83 Ill. 365; *Penn. Co.* v. *Sloan*, 1 Bradw. 370; *Roche* v. *Rhode Island Ins. Ass.* 2 id. 360; *Moore* v. *Chicago, etc. R. R. Co.* 43 Iowa, 385; *Fithian* v. *New York and Erie R. R. Co.* 31 Pa. St. 114; *McAllister* v. *Penn Ins. Co.* 28 Mo. 214; *Bronser* v. *New England Fire Ins. Co.* 21 Wis. 506.

Where the garnishee is indebted, it will not vary his liability that his contract with the defendant is to pay the money in another State.    Drake on Attachments, (4th ed.) sec. 597; *Blake* v. *Williams*, 6 Pick. 286; *Sturtevant* v. *Robinson.* 18 id. 175; 2 Bradw. 362; *Adams Express Co.* v. *Scott*, 104 Mass. 164.

The judgment against the appellant in this State is a good bar to any suit in Missouri by defendant, Crane.    *Morgan* v. *Neville*, 74 Pa. 52; *Allen* v. *Watt*, 79 Ill. 284.

The appellant ought to be liable for the costs.    *Smith* v. *Lyons*, 80 Ill. 600.

Mr. Justice Walker delivered the opinion of the Court:

This was an action by attachment, brought before a justice of the peace of Adams county, by Chauncey Ladd, a resident of this State, against one Crane, a resident of the State of Missouri.    No property of Crane being found, the Hannibal and St. Joseph Railroad Company was summoned as a garnishee.    The company filed an answer on the return day of the writ of attachment.    The justice of the peace issued a *scire facias* against the company, and on the return day the company filed·a second answer, and the justice of the peace thereupon rendered a judgment against the company, in favor of Crane, for the use of Ladd, for $17.72.    From that

judgment the company appealed to the circuit court, where the judgment of the justice of the peace was affirmed. An appeal was prosecuted to the Appellate Court, and the judgment being affirmed, the case is, on a certificate of the judges of that court, under the statute, appealed to this court.

The material facts of the case are, that the Hannibal and St. Joseph Railroad Company is a company organized under the laws of the State of Missouri, and has its general office and principal place of business in that State, as required by law, and its railway tracks are wholly in the State of Missouri. The railway company, before and at the time of suing out the attachment, and the service of the garnishee summons, ran its trains regularly into the city of Quincy, in Adams county, over and across the bridge at that place. The company then, and previous to that time, kept an agent in the city, and received freight and passengers for transportation over its road, and the company then had personal property in the city, to-wit: engines and cars. The company, by its answer, admits an indebtedness to Crane, but denies it held any property of his in possession or under its control.

These are the conceded facts, and the object of this appeal is, to determine whether a corporation of another State, doing business and having property in this State, may be garnisheed for a debt it owes to a resident of the State of its domicil, in the courts of this State. The question is presented for the first time in this court.

It is familiar law that when a corporation is created it becomes an artificial person, and may perform all acts and claim all rights with which it is empowered and endowed by its charter, and it may, within the scope of the powers thus conferred and duties imposed, like a natural person, acquire rights and incur liabilities precisely as a natural person. If so empowered, it may contract debts, purchase, sell and enjoy property; and it is not denied in this case that this

company was empowered to contract the debt, and that it owed the money to Crane. It, then, for the purposes of this suit, must be regarded as a person capable of owning property, and of being indebted, and liable to be sued for its indebtedness. If this be true, it must be treated the same, in all respects, as a natural person placed in the same situation. This, we think, will not be contested, as we are aware of no law giving such bodies preëminence or special privileges over natural persons. Suppose a merchant in Missouri, transacting his principal business there, had located a branch in Quincy, in this State, and the agent of that branch had been garnisheed for a debt his principal owed his chief clerk or book-keeper in the principal place of business, could the garnishee process be sustained in such a case? If so, then it must lie against this railroad company.

In this and the supposed case, the artificial and the natural persons are both non-residents, both owe an employé who is indebted to a non-resident of the State of their domicil, are both doing a branch or collateral business at the place of the residence of the creditor of their employés, and we will suppose that in both cases that creditor sues out an attachment against their several employés, and garnishee summons is served on their several agents. Can any person, without extreme refinement and impalpable distinctions, say that the one proceeding should be sustained and the other defeated? It would seem, on principle, that no reasonable or justifiable distinction could be made. Then, would a natural person be liable to this process under these circumstances? We feel confident that he would, on a fair construction of our Attachment law, if not on precedents giving construction to substantially the same kind of statutes in other States.

It can not be contested that had the attachment been against the railroad company, its property in the county might have been levied on under the writ, and all persons owing the road, or having property, effects and choses

in action belonging to the road in their hands or possession, might have been garnisheed; and there can scarcely be a doubt that the road might have been sued, and the service had on the agent at Quincy, so as to have given the court jurisdiction. Such a service on such an agent of a domestic corporation, we presume, none would have questioned as being sufficient.

In the case of *Mineral Point R. R. Co.* v. *Keep*, 22 Ill. 9, it was held, the act providing for service of process on corporations was not confined to domestic corporations,—that it was passed to embrace corporations having property in this State and their officers and places of business in another State,—and this has been the received construction ever since.

In *Peoria Ins. Co.* v. *Warner*, 28 Ill. 429, it was held this was a remedial statute, and should be most liberally construed. It does not require a liberal construction to bring foreign corporations within the act. The provision is, that "in all cases where suit has been or may hereafter be brought against an incorporated company, process shall be served." Language more comprehensive could scarcely have been employed. It says any corporation, without the slightest reservation or limitation. A thing may be embraced in the provisions of a statute by being specifically named, or by being embraced in a class that is named. Here the class named is all corporations, and when the statute says any corporation, appellant being an individual corporation, it comes within the provision as fully as had its name been employed specifically in the statute. It would have been no more comprehensive had it said all corporations of every kind, whether domestic or foreign, doing business in this State.

In *Mineral Point R. R. Co.* v. *Keep, supra,* and in *Midland Pacific Ry. Co.* v. *McDermid,* 91 Ill. 170, it was expressly said that the section applied to and embraced foreign, as well

as domestic corporate bodies doing business in this State. In the latter of these cases the plea was that the railroad was a Nebraska company, doing business alone in that State, and the plea averred that the company had no property, nor did they transact any business or have an agent, in Illinois. It was on this last averment the case was decided in favor of the railroad company. Nor is this rule lacking the support of precedent. It has been held in other tribunals that a foreign corporation, by establishing an agency in another State, thereby so far becomes an inhabitant of the latter State as to become subject to the process of its courts, (*Fithian* v. *New York and Erie R. R. Co.* 31 Pa. St. 114, *McAllister* v. *Penn Ins. Co.* 28 Mo. 214, and *Branson* v. *N. E. T. Ins. Co.* 21 Wis. 516,) and the doctrine is reasonable and just. If a foreign corporation is so far an inhabitant in a State into which it comes, as to transact its business, it should be so far held an inhabitant as to be sued and served with process on the officer who transacts its business, and the statute has so provided. Section 26, chap. 32, Rev. Stat. 1874, entitled "Corporations," subjects foreign corporations to all of the liabilities, restrictions and duties that are imposed on like corporations of this State. One of the liabilities of corporations organized under the laws of this State is, to be sued by service on an officer or agent, and if the liability of foreign bodies is in all respects the same, then they may be sued and served with process in the same manner. No one will deny that our corporations may be garnisheed, and the process served on an officer or an agent transacting their business; and if so, it must follow that a foreign corporation is under the same liability. The language of the provision is broad enough to embrace this corporate body in this liability, and there is nothing to exclude it from this or any other liability. The legislature had the power to impose it, and the courts must enforce it, and there is neither injustice nor hardship in complying with the requirement.

If, then, the transaction of such business and the location of such an office in this State, by a corporate body of another State, authorizes a service that would bind such a body on a judgment rendered against it, why will not such a service bind it as a garnishee? No distinction has been taken in argument, or reason assigned, nor is any perceived. The fifth section of the Practice act says process, and it must mean all process, as no exceptions are specified or otherwise made. It would, therefore, seem to embrace all process. This garnishee summons is process, and is, therefore, within the terms of the statute, nor has any sufficient reason been shown for taking this class of cases out of its operation. It is true that a number of cases of highly respectable courts of other States giving construction to their statutes are referred to as having a bearing on this question. We, however, do not regard them as of controlling authority in giving construction to our statutes. The policy which dictated the adoption of their and our statutes may have been essentially different. Great wrong and injustice was perpetrated on our people by corporations, located in other jurisdictions, sending agents into this State, who, in the name and on the behalf of such corporations, transacted business with our people, acquired and held property belonging to the corporate body, and when the body became liable it defied the creditor and denied his right to sue in this State. Not only so, but many of our domestic corporations had the directors, officers and place of business in New York or other eastern cities, and insisted that all creditors must sue the company there, and not in this State. It was to correct these evils and prevent such wrongs that the act of 1853 was adopted, and to effectuate and not to thwart that policy this court has held the act must have given to it a liberal construction. We do not know the policy that prompted the adoption of the laws of other States on this subject.

It is urged that the statute requires insurance companies of other jurisdictions to file a written consent the service on its agent shall be accepted as service on the company, before it will be permitted to transact business in the State, and we must therefore conclude that this is legislative construction that the fifth section of the Practice act should apply alone to our own corporations. It is more reasonable to suppose that as the General Assembly were engaged in regulating and prescribing the terms upon which foreign insurance companies should be permitted to transact business in this State, the consent was required to prevent such litigation as this. It was no doubt done to settle and put at rest this question of service. And when the General Assembly, if it ever shall, comes to place all foreign corporations under regulations, it would be, in the promotion of justice to our own citizens, eminently proper to impose a similar requirement upon each of such bodies. Thus, whilst extending to them the rights, privileges and immunities enjoyed by our domestic corporations, they shall be subjected to the same burthens and liabilities. This is eminently just. When natural persons come into the State, whether from other States of the Union or as aliens, they are required to conform and submit to the laws that govern our own citizens, and why not foreign corporations, who only transact their business at sufferance, while natural persons are here as a matter of right? Corporate bodies should be content to have extended to them the same rights that are enjoyed by natural persons, and foreign corporations should be content to receive the same privileges and protection as are extended to our own corporate bodies. There certainly is no law making any distinction.

It is urged that the garnishee must reside in the territorial jurisdiction of the court to render the process effective to reach the fund, and attachment according to the custom of London is referred to in support of the proposition. We are

not bound or required by our statute adopting the common law of England, to enforce local customs, as it does not impose local customs and statutes as a rule of action in this State. On the contrary, they are excluded. The proceeding by foreign attachment was unknown to the common law. It, by local custom, existed in London, Exeter, and may have existed in some other places. (1 Roll's Ab. 552; 1 Com. Dig. 580.) It was a local custom, and wholly governed by the special custom. As our legislature in nowise refers to it in adopting our earliest Attachment law, or subsequent amendments or revisions, we have no ground to suppose that body had those customs in mind, or could have intended them to have any bearing in giving these acts construction. The decisions of other courts, however, are referred to in support of the same doctrine. It may be their attachment laws are borrowed from and based on these customs, and if so, their construction is justified, if not required. At any rate, those courts manifestly give a strict construction to their attachment laws. On the contrary, our statute is most liberal, intending to remove all technical objections, by permitting almost every kind of amendment at almost any stage of the proceeding, and expressly providing the writ may issue and be served on Sunday, when facts specified in the act are shown to exist. In view of these liberal provisions, and the spirit of the whole act, we should defeat the undoubted intention of the General Assembly by adopting a strict construction. Hence the cases referred to are not of controlling authority.

It is urged, and the agreed facts show, that the debt was owing in Missouri, by a Missouri corporation, to an inhabitant of that State, payable by the treasurer of the company to the creditor in that State, and therefore the company should not be required to pay it elsewhere, or in any other manner. Such debts are not local, nor to recover them must the action be local. It is urged that the demand being thus

payable in Missouri, and by the treasurer of the corporation, a demand was required before an action could be maintained at another place. The doctrine that a plaintiff suing on a promissory note, payable at a specified place, need not aver and prove a demand, has been the settled law in this State for more than forty years. It was so announced in *Butterfield* v. *Kinzie*, 1 Scam. 445, and *Armstrong* v. *Caldwell*, id. 546. In the first of these cases the court said the doctrine was so well settled by numerous authorities that it was unnecessary to refer to the decisions, or to examine the reasons upon which they were based. The question was again before the court in the case of *Hunt* v. *Divine*, 37 Ill. 137. In that case the former decisions were referred to, and controlled the decision, and decisions of a number of courts were referred to in illustration of the rule. The same question was again before the court in the case of *Wood* v. *Savings, Loan and Trust Co.* 41 Ill. 267, with the same result. At that time a large number of authorities were referred to as supporting the doctrine. We, notwithstanding all that has been urged against it, must consider the doctrine as settled, and must hold a demand was unnecessary to a recovery. Nor do we see that the fact it was agreed that it was to be paid by the treasurer of the company can be of the slightest importance. It is believed to be the custom, without perhaps a single exception, that the treasurer of all corporate bodies holds and pays out their money. That is the purpose of the creation of his office and his appointment. It is a mere matter of convenience, to avoid the calling together the directors to make every payment by the body. Such a fact can have no legal significance, or change the rule of law governing ordinary transactions, or the legal rights of any one. The corporation is an artificial person, and in the pursuit of its legitimate business, unless it has express exemptions, must conform to the same rules that govern natural persons in like transactions.

Appellant refers to the Revised Statutes of the United States, section 739, as having some bearing on this question, but what, is not apparent. That section seems, as quoted, to regulate the service of process in some of the .District Courts of the United States; but how, or for what possible reason, it can have the slightest effect on the State courts is . not perceived. Even if it were possible to concede that Congress has the slightest power to regulate the practice of the State courts, there is no pretense that this act, in terms, or otherwise, assumes to attempt any such thing. As well refer to the practice act of any State in the Union as controlling the practice of our courts. If that section can have the slightest effect, it is not perceived.

It is urged, with apparent earnestness, that the justice erred in rendering judgment against appellant for costs, and the circuit court erred in affirming the judgment. No error is perceived in such practice. The Cost act entitles successful parties to recover their costs, and we are unable to see why he may not in garnishee proceedings; but the garnishee should never be required to pay costs out of his own means and at his own cost, unless he resorts to unnecessary and protracted litigation. Where the court has jurisdiction of the subject matter and the garnishee, the judgment is binding on the principal debtor. *Allen* v. *Watt,* 79 Ill. 284. The judgment for costs constitutes a part of the recovery, and could have been as justly set off against what the company owed Crane, as the amount of recovery for the use of Ladd. In that, there is no error in any of the courts through which the case has come; but whether the costs incurred in the several appeals is a proper set-off in an adjustment between appellants and Crane is not a question presented for discussion or decision in this case; but the justice of the peace had . full jurisdiction, and appellant had admitted that it owed Crane more than he owed Ladd, and no reason is perceived

why Ladd should not have recovered his costs, leaving appellant and Crane to adjust that between themselves.

Perceiving no error in the record, the judgment of the Appellate Court is affirmed.

*Judgment affirmed.*