## Grand Lodge, Brotherhood of Locomotive Firemen, v. Philip C. Cramer.

1. APPEARANCE—*Entered by Pleading in Bar.*—By pleading in bar, a defendant enters his appearance as completely as if summons had been properly served upon him.

2. PLEAS IN ABATEMENT—*Not Signed.*—A plea in abatement not signed by the party pleading it, or by his attorney, is bad on demurrer.

3. SAME—*To an Officer's Return—Immaterial Issues.*—A plea in

Brotherhood of Locomotive Firemen v. Cramer.

abatement to an officer's return, which tenders immaterial issues and does not, in express terms, traverse such return, is insufficient.

4. SAME—*Must Give a Better Writ.*—A plea in abatement which does not give the plaintiff a better writ, is defective.

5. SAME—*Second Plea or Motion Improper.*—After an insufficient plea in abatement to an officer's return of service has been disposed of, a motion to quash the service on substantially the same grounds will not be entertained.

6. DEFENSES—*Of a Dilatory Nature.*—Where the defense to an action is of a dilatory nature, it should be pleaded at the first term of court, where a declaration has been filed ten days before the term.

7. PLEADING—*Corporate Existence.*—Where, in an action against a beneficiary association, the certificate, executed by the grand master and grand secretary and treasurer, under the seal of the association, and countersigned by the master of the subordinate lodge, with the seal of such lodge affixed, is set out in the declaration, it is sufficient to show, *prima facie,* that such association is a corporation.

8. CORPORATIONS—*Right to Have a Common Seal.*—The right to have a common seal is necessarily and inseparably incident to every corporation and this is so without any clause in its charter or act of incorporation expressly empowering it to use one.

9. BENEFIT ASSOCIATIONS—*Estoppel to Deny Corporate Existence.*—In an action against a benefit association on a beneficiary certificate, sealed with the association's seal and signed by its proper officers, declaring the deceased to be a member of the order in a certain lodge, such association will be estopped by the recitals in such certificate to deny its own corporate existence.

10. SAME—*Adjustment of Claims Binding, etc.*—Where the proper officers of a benefit association examine and pass upon a claim and agree to pay, such promise, as a settlement, is binding upon the association unless it was procured by fraud.

11. PRACTICE—*What may be Recovered Under the Common Counts.*—Where a claim founded upon the certificate of a benefit association is presented for adjustment to the proper officers of such association and is by them examined and allowed at a fixed sum, and which sum they promise to pay, such promise is binding upon the association and may be recovered under the common counts as an account stated.

12. APPEALS—*By Benefit Associations Under By-Laws.*—Where a claim by a holder of a certificate in a benefit association is submitted to the proper officers of the association for adjustment, and such officers examine and allow or promise to pay the same, such officers can not afterward appeal to the grand convention of the order in the absence of authority in its constitution so to do.

13. SETTLEMENTS.—If a settlement of a claim is fairly and honestly made and coupled with a promise to pay the amount, such settlement is conclusive upon the parties, unless it was obtained by fraud.

Assumpsit, on the certificate of a benefit association. Appeal from the City Court of East St. Louis; the Hon. BENJAMIN H. CANBY, Judge,

presiding.  Heard in this court at the February term, 1895.  Affirmed.
Opinion filed August 31, 1895.

COCKRELL & MOYERS, attorneys for appellant.

M. MILLARD, attorney for appellee.

MR. PRESIDING JUSTICE SCOFIELD DELIVERED THE OPINION
OF THE COURT.

Appellee sued appellant upon a certificate of insurance for
$1,500, which amount was to be paid to him in the event of
his total disability, or to his wife in the event of his death.
There was an attempt to serve appellant by leaving a copy
of the summons with its subordinate lodge as its agent.  In
disposing of the questions properly before us on this record,
it is not necessary for us to decide, nor do we decide,
whether or not the subordinate lodge is the agent of the
grand lodge for the purpose of serving process, or whether,
if it is such agent, the copy may be properly left with the
master or chief officer and the secretary of the subordinate
lodge.  By pleading in bar, a defendant enters his appear-
ance.  Such pleas were filed in this case.  If, then, the de-
murrer to the plea in abatement was properly sustained, and
the motion to quash the service was properly overruled, on
grounds which do not require a decision of the above ques-
tions, the defendant was in court, after having filed his
pleas in bar, and the question of the agency of the subordi-
nate lodge does not arise on this appeal.

The plea in abatement alleged that the defendant was
not, and never had been, a corporation; that there was an
organization called the Brotherhood of Locomotive Firemen,
with headquarters at Terre Haute, Indiana, but that its
grand master, secretary and treasurer reside in Terre Haute
and have never resided in the city of East St. Louis; that
neither of the three individuals upon whom service had been
made, was, or ever has been, an agent of the Brotherhood
of Locomotive Firemen; that, if the individuals served
were officers of the subordinate lodge, they did not report

service to their lodge, nor did that lodge take action and notify the Brotherhood of Locomotive Firemen.

The plea contains an introductory averment, which will be mentioned hereafter, and an argument which need not be recited.

A special demurrer filed to this plea was sustained and no leave to amend was applied for. The demurrer was properly sustained for many reasons.

The plea was not signed, either by appellant or by its counsel; and therefore was insufficient. Mineral Point Railroad Co. v. Keep, 22 Ill. 9; Holloway et al. v. Freeman, Id. 197.

. The plea, though not signed, purports in the body thereof to be by the Brotherhood of Locomotive Firemen, instead of the defendant, and does not show that these are the same organizations, except argumentatively in the introductory averment. Hence, for aught appearing to the contrary, the plea was filed in the name of interloper.

The plea is a pot-pourri of traverse, affirmative matter and legal argument, and for this reason was bad.

The plea denies that the individuals to whom the copies of the summons were delivered were agents of the Brotherhood of Locomotive Firemen, but does not deny that they were agents of defendant. Nor does the plea deny, except argumentatively, that F. W. Arnold Lodge No. 44, was an agent of the defendant, or that a copy of the summons was left with that lodge through its proper officers.

The plea was defective in not giving the plaintiff a better writ. In American Express Co. v. Haggard, 37 Ill. 465, it is said: " The counsel for the appellant then filed a plea in abatement in the name of ' Johnston Livingston, William G. Fargo, Henry Wells and others,' admitting that they, ' together with others,' are doing business under the name of The American Express Company, but denying that said company is now, or ever has been, a corporation. A demurrer was sustained to this plea, and properly. It is defective in not giving the plaintiff a better writ. 1 Chitty, 440. It should have set forth who were the ' others,' with whom

Livingston, Fargo and Wells say they are doing business, under the name of The American Express Company, in order that the plaintiff might know against whom to bring his suit, if the plea should prove to be true."

For these reasons it was not error to sustain the demurrer to the plea, which was done at the August term of the court, 1894.

At the December term, 1894, appellant filed a written motion to quash the service upon substantially the same grounds as those relied upon in the plea in abatement. It is urged that the court erred in overruling this motion.

Where one plea in abatement has been disposed of and another of the same nature is filed, the latter may be stricken from the files. Cook et al. v. Yarwood, 41 Ill. 115.

Pleas in abatement should be filed in "apt time," at the earliest practicable moment; after a motion seeking the same end has been disposed of, the right to plead in abatement may be considered as waived. Holloway et al. v. Freeman, *supra;* Union National Bank of Chicago v. First National Bank of Centerville, 90 Ill. 56.

We are unable to see why the converse of this proposition should not be held to be true—that is, that after an insufficient plea in abatement has been disposed of, a motion to quash the service on substantially the same grounds will not be entertained.

Again, it has been held that where the defense in an action is of a dilatory nature, it should be interposed at the first term, if the declaration was filed ten days before the term. Archer et al. v. Clafflin et al., 31 Ill. 306. A motion to quash the service should be regarded with no more of favor than a plea in abatement seeking the same end. In this case the declaration was filed more than ten days before the August term and the motion was not made until the December term thereafter. The fact that the return was amended at the August term would not change the rule, inasmuch as there was ample time to make the motion after the return had been amended, and the plea in abatement was in fact filed and disposed of afterward and at the same term.

The only point made by appellant in the argument of the alleged error in overruling the motion to quash the service is, that the declaration does not show that appellant is a corporation, and that therefore the summons could not be served by leaving a copy with appellant's agent. It is said that the name of appellant does not necessarily imply that it is a corporation, for such a name is sometimes assumed by a partnership. Two decisions of our Supreme Court are referred to in support of this affirmation.

But appellant has overlooked a very important part of the declaration. The beneficiary certificate is set forth in the declaration and it appears therefrom that the certificate was executed by the grand master and grand secretary and treasurer, under the seal of appellant, and was countersigned by the master of the subordinate lodge, with the seal of the lodge affixed thereto.

That this is sufficient to show, *prima facie*, that appellant is a corporation, is strongly suggested by the fact that appellant afterward filed a plea to the country denying its corporate existence. (It may be said, *sub rosa*, that appellant filed an affirmative plea to the same effect, but offered no evidence to support it.)

The right to have a common seal is necessarily and inseparably incident to every corporation. 1 Blackstone's Commentaries, Marg. p. 475; Angell & Ames on Corporations, Sec. 110.

The statutes of this State provide that corporations, whether for pecuniary profit or not for pecuniary profit, may have and use a common seal. A common seal is defined to be the seal of a corporation (Bouvier's Law Dictionary), and the seal of a corporate body (Anderson's Dictionary of Law).

In Angell & Ames on Corporations, Sec. 217, it is said: "Not only is it incident to every corporation to have a common seal, without any clause in the charter or act of incorporation expressly empowering it to use one, but it may make or use what seal it will."

In an action against a benefit association, on a benefi-

ciary certificate, sealed with the company's seal, and signed by its proper officers, which declares the deceased to be a member of the order in a certain lodge, the defendant will be estopped, by the recital in its deed, from attacking the corporate existence of the lodge. I. O. M. A. v. Paine, 122 Ill. 625. Much more would the benefit association, issuing the certificate in this manner, be estopped from attacking its own corporate existence.

It follows that the declaration showed such facts as not only indicated that appellant was a corporation, but even precluded appellant from asserting the contrary, if the facts alleged were true.

This disposes of the only point made by appellant's argument in support of the proposition that the court erred in overruling the motion to quash, and also disposes effectually of the defense of *nul tiel corporation* afterward filed with the other pleas in bar.

And now, having found that the plea in abatement was open to demurrer, and that the motion to quash was properly overruled, and that appellant afterward entered its appearance by pleading in bar, the way seems to be open for a consideration of the case on the merits.

The record contains 154 pages, but the facts upon which the decision of the case turns are simple, and may be stated in a few sentences.

At the time when he was hurt, appellee was a member of F. W. Arnold Lodge, located at East St. Louis, and was entitled to the full amount of his beneficiary certificate, if his injury amounted to "total disability." There are but two questions arising on the evidence—first, was the injury a total disability? and, second, was there a binding settlement and adjustment of the claim?

On the night of July 10, 1891, appellee was running an engine as an engineer for the Bridge and Tunnel Company, when an old man and a little girl appeared unexpectedly on the track before him. To save their lives, appellee shut the throttle and threw back the lever, striking his arm, in so doing, against some part of the cab, and thereby causing the

injury upon which the relief claimed is predicated. Appellee did not work for several days after the accident, but finally resumed his labor of "hostling and running an engine as before." He continued to work for several months, and then his arm "gave out," as he claims, and he ceased running or firing an engine. He then engaged in switching for a few days, and, finding that he could not do a switchman's work, he gave up his position and made his claim for the payment of the amount of his certificate for "total disability."

Whether or not he was totally disabled within the meaning of his certificate and of appellant's constitution, is a serious question. According to appellant's definition of the words, they can not be taken as meaning that one must be a helpless paralytic, a mental and physical wreck, blind, deaf and dumb, and without the use of either hands or feet. For Sec. 59 of the constitution provides that "a beneficiary member, in good standing, becoming totally blind, or sustaining a loss of a hand above the wrist joint, or of a foot above the ankle joint, shall be entitled to the full amount of his beneficiary certificate," and Sec. 60 shows that total disability relates to incapacity for the performance of manual labor. Here the loss of a hand above the wrist is made the equivalent of total disability. Blind Milton might be able to dictate Paradise Lost, and yet be totally disabled under the above language. A lawyer with a wooden leg, practicing his profession for ten thousand dollars a year, would be totally disabled, and so would a physician with a cork hand, dealing out pills and tablets for a like stipend per annum, provided these gentlemen were engineers when hurt, and beneficiary members of one of appellant's subordinate lodges.

The proper papers were forwarded by the subordinate lodge to Eugene V. Debs, appellant's grand secretary and treasurer, at Terre Haute, Indiana. Sec. 59 of the constitution provides that the papers shall be forwarded to the "grand secretary and treasurer, who shall, thereupon, if the claim be valid, adjust the same in its regular order." Sec.

60, which seems to be the section applicable to the present case, provides that " all claims arising under the provisions of this section shall be referred to the grand lodge officers, who shall make a personal investigation thereof, employing such physicians as in their judgment may be necessary to determine the validity of the same." Sec. 63, which seems to apply to all cases, provides that the grand secretary and treasurer shall adjust the claim upon receiving official notice thereof, and draw an order, and have a draft issued and forwarded to the secretary of the subordinate lodge.

There can be no doubt, under the constitution and the evidence, that appellee's claim was properly presented to Mr. Debs, and that he, as grand secretary and treasurer, had full power, with the aid of physicians, to investigate the claim, and to promise to pay it if he found it to be valid, and to bind appellant by his action.

The constitution, as far as the same is in evidence, makes no provision for a re-investigation of the claim, or for an appeal or reference of the question to the grand convention, or grand lodge, as it is also called. Sec. 2 does provide that the " grand lodge may hear and determine all matters of controversy that may be brought before it by appeal, or otherwise." There is nothing to show what these matters of controversy are, or what questions may be taken to the grand lodge by appeal, or how appeals may be taken or perfected. As far as we are informed, the action of Mr. Debs upon the claim is final.

On receiving the claim Mr. Debs caused appellee to be notified that if he wished to have the matter disposed of at an early day, he must appear at Terre Haute for examination. Appellee complied with this request, and submitted his naked arm to the scrutiny and examination of two physicians and surgeons selected by Mr. Debs and the grand master. The examination lasted for about one hour. Appellee told the physicians that his arm had been broken when he was a boy, and they told him if he would furnish them with a favorable affidavit by the physician who examined him for admission to the brotherhood, they would rec-

ommend the allowance of the claim. The affidavit was procured and forwarded, and showed that, when appellee was so examined, on May 13, 1886, there was "no defect in his right arm." Afterward the following letter, dated at Terre Haute, March 4, 1892, and addressed to appellee, was received by the latter:

"Dear Sir and Brother: Your favor of the 3d inst. has been received, and in reply I beg to say that the physicians have recommended the allowance of your claim and that the same will be issued and paid in its regular order." This letter was signed by Mr. Debs, and was headed "Grand Lodge Brotherhood Locomotive Firemen." Afterward, appellee, on the strength of this promise, mortgaged his home.

From those facts the jury were justified in finding that a settlement and adjustment of appellee's claim had been made, whereby appellant, through its proper officer, had promised to pay to appellee the amount of his certificate.

This promise dispenses with further consideration of the question, whether or not appellee was totally incapacitated for the performance of manual labor. Conceding that this was a serious question, or even that the evidence is against him on that point, the settlement would be binding upon appellant, unless it was procured by fraud, or was superseded by the submission of the question to the grand convention with the concurrence of appellee. Farmers & Merchants Insurance Co. v. Chesnut et al., 50 Ill. 111; American Insurance Co. of Chicago v. Crawford, 89 Id. 62; Home Insurance and Banking Co. of Texas v. Myer, 93 Id. 271; Miller's National Insurance Co. v. Kinneard, 136 Id. 199. And in this view of the case a recovery may be had under the common count upon an account stated. Illinois Mutual Fire Insurance Co. v. Archdeacon et al., 82 Ill. 236.

But it is argued by counsel for appellant that this settlement was brought about by fraud on the part of appellee, and that, if Mr. Debs had known all of the facts, he would not have allowed this fraudulent claim.

Certain uncontradicted facts are worthy of mention in this connection. Appellee went to Terre Haute for exam-

ination, and was there examined by two competent physicians, selected for that purpose by appellant's grand officers. Even if the physicians were unskilled, appellee did not choose them and appellant can not take advantage of the fact. The officer charged with the duty of passing upon the claim, and who should understand the meaning of total disability as used by the brotherhood, received the report of the physicians and pronounced appellee's injury a total disability. Now, it is not said that appellee conducted himself, while under the eyes of the physicians, so as to deceive them, or that he misstated facts to them, but that, before presenting his claim, he had applied in writing to a certain corporation for a position, and had stated in his application that he was sound in body and limb. After appellee's claim had been allowed, a protest, setting up this fact, was filed with Mr. Debs by Industrial Lodge No. 21 of St. Louis, and was regarded by him as sufficient authority for reopening the investigation. Upon this second investigation the claim was disallowed and was referred to the grand convention, where the disallowance of the claim was finally affirmed.

Appellee admits that he stated in the said application that he was sound, but affirms that this was not true, and excuses the untruth by saying that he needed work, and that many men, in applying for work, misrepresent the facts in order to secure positions.

The question of the punishment of appellee for lying, when not under oath, will be referred to a court conversant with all the facts, and more competent to deal with the offender than an earthly tribunal. An earthly court must act according to certain rules of law calculated to secure approximate justice where finite limitations render the attainment of exact justice in all cases an impossibility. Suffice it to say that the question of fraud was for the jury to settle; that it was fairly submitted to them, and that the verdict in favor of appellee on that point is justified by the evidence, and is therefore a finality.

But it is argued that the case was submitted to the grand convention by appellee on appeal, and that he is bound by

the decision of that body to whom he voluntarily intrusted his case.

Appellee took no appeal. There is no method of taking appeals provided, and it is not easy to see how the grand secretary and treasurer, without authority of the constitution, could appeal from his own decision. If the constitution contains such authority, that portion of it is not in the record. Appellee denies that he submitted the question to the grand convention. There was a conflict of the evidence upon this point, and the question was submitted to the jury by appellant's second instruction, which conditioned the validity of the grand convention's action upon the fact that the "plaintiff appeared before a committee appointed by said convention to investigate contested claims and *submitted his claim to said committee.*" Under this instruction, if appellee did not submit his claim to the committee, appellant is bound by the allowance of the claim by the grand secretary and treasurer. Appellant will not be allowed to say here that its instruction is not the law." Under the evidence, the jury were justified in finding that appellee did not submit his claim to this committee or to the grand convention, and this finding disposes of the alleged appeal and leaves the allowance of the claim by Mr. Debs in full force.

But one instruction was given for appellee, and by this the jury were told that if a settlement and adjustment of the claim was fairly and honestly made, and if this was coupled with a promise to pay the amount, such settlement would be conclusive on the parties unless the settlement was obtained by the fraud of the plaintiff. We see no objection to this instruction; nor has any objection been urged against it in the argument. All of appellant's instructions were given without modification, and these went to the extreme verge of the law in appellant's favor.

It is said that certain sections of appellant's constitution admitted in evidence were irrelevant; but wherein these sections were irrelevant appellant does not undertake to show. We think that there was no prejudicial error in these rulings, or in that other ruling complained of whereby the

224    APPELLATE COURTS OF ILLINOIS.

VOL. 60.] Millers' Nat. Ins. Co. v. Jackson County Milling Co.

protest from Industrial Lodge was not admitted in evidence. It was shown by parol and was not disputed that the protest was made; that it was in writing; that it was filed with Mr. Debs; that it was before the grand convention; and that it alleged, as the ground of the protest, that appellee had represented himself as sound in body and mind in his application for work. It follows that appellant was not prejudiced by the refusal of the court to admit the protest in evidence, even if it was proper evidence in the case.

The judgment is affirmed.