STATE v. DAY.

1. **Criminal Law:** LARCENY: VERDICT: EVIDENCE TO SUPPORT. Although the evidence tending to connect the defendant with the larceny in this case is not strong, yet it is not so weak as to justify the appellate court in setting aside the verdict of "guilty."

2. ———: ———: EVIDENCE: PRACTICE. Counsel for the State asked a witness: "What did you find in defendant's wagon?" to which question defendant objected as incompetent and immaterial, and the objection was overruled, defendant excepting. The witness then replied, enumerating many things found in the defendant's wagon, one of which, at least, tended to connect defendant with the larceny, while the others did not, but were possibly prejudicial to the defendant. *Held* that, as the question tended to bring out *some* relevant testimony, the objection to it as a whole was properly overruled; and, since the defendant did

not, in the trial court, move to strike out that portion of the answer which was irrelevant, he cannot for the first time in this court complain that he was prejudiced thereby.

3. ———: ———: ———: ERROR WITHOUT PREJUDICE. The admission of immaterial testimony, which, however, could not possibly have prejudiced the defendant, is not such an error as will justify the appellate court in reversing a judgment on a verdict of "guilty."

4. ———: ———: ———: ERROR WAIVED. Where witness is allowed, without objection, to drift into a line of testimony prejudicial to defendant, and defendant makes no motion in the trial court to exclude such testimony, its admission cannot be complained of in this court.

## Appeal from Polk District Court.

### Thursday, December 7.

THE defendant was convicted of the crime of larceny, and sentenced to the penitentiary for three years. He now appeals to this court.

*D. Donovan*, for appellant.

*Smith McPherson, Attorney-general*, for the State.

ADAMS, J.—The property which the defendant was charged with stealing consisted of two horses, a halter and a bridle, 1. CRIMINAL belonging to one Cook. The property was taken law : larceny: verdict : evi- from Cook's stable eleven or twelve miles north- dence to sup- port. west of Des Moines, between seven and twelve o'clock at night, and found a short time before day break on the road to Des Moines and about four miles therefrom. Upon one of the horses was found a saddle belonging to one of Cook's neighbors. The defendant, at the time of the alleged larceny, was camping with his wife in the outskirts of Des Moines. He had with him a covered wagon, two harnesses and some other articles of personal property which he carried with him in the wagon. He did not, just at the time of the alleged larceny, appear to have any horses. The fact that the horses of Cook were stolen by some one is very

clearly established, but the evidence tending to connect the defendant with the larceny is not strong. There was evidence tending quite clearly to show tracks of horses leading along the road from the place where the horses were found to the defendant's camp wagon. Whether they were made by the horses in question admits, to our mind, of some doubt, but we think that the evidence tends in some slight degree, at least, to show that they were. In connection with the tracks were the tracks of a man made as if he were accompanying the horses. The man's tracks appeared to be made by a person wearing heel braces, and heel braces were found in the defendant's wagon.

The evidence showed that the horses were wild and ungovernable and difficult to be harnessed by a stranger, and that one of them was afraid of a covered wagon. The theory of the State was that the defendant took the horses to the place where his wagon was, and attempted to harness them, but was unable to do so, and, finding that he could not probably escape with them and with his wagon and effects, turned them loose and started them towards home.

The defendant insists that the evidence is insufficient to support the verdict. We have set out what is in substance the strongest evidence against the defendant. We have, however omitted some facts and circumstances which the defendant claims should be deemed sufficient to exculpate him. It is said that the horses did not have time enough to go to Des Moines and return to the place where they were found. It is said that the defendant was seen so late in Des Moines, on the evening of the alleged larceny, as to render it in the highest degree improbable that he could have committed it. Many other matters are urged upon our attention by the defendant's counsel in a very able and candid argument. But we have to say that, after having given them careful consideration, we do not think that the evidence, or want of evidence, is such as to justify us in interfering with the verdict.

There remain to be considered certain objections to the ad-

mission of evidence. A witness was introduced who ex-
amined the defendant's wagon and contents the next day after the alleged larceny was committed. He was asked a question in these words: "What did you find in the defendant's wagon?" The defendant objected to the question as incompetent and immaterial. The objection was overruled, and the defendant excepted. The witness answered that he "found an old pair of boots with heel braces on them, a lot of store goods in a sack, a revolver, and jewelry enough for half a dozen women."

2. ——:——:
evidence:
practice.

While it may be that the evidence as to the finding of the store goods, revolver, and jewelry was immaterial, and possibly not without prejudice, we do not think that we should be justified in reversing upon this ground. The objection made was to the question as a whole. Now the whole of the evidence called for was not immaterial. The finding of the heel braces had, at least, some slight tendency to connect the defendant with the larceny of the horses, if they were in fact stolen. The court might, and perhaps should, upon the objection being interposed, have inquired of the counsel for the State what the object of his question was, and, if told that the object was to connect the defendant with the tracks that appeared to have been made by a man accompanying the horses, he might have limited the counsel in his inquiry to such object. The strictly proper mode of examination, we think, would have been to first call the attention of the witness to the evidence which had been introduced in regard to the tracks, and then to have asked him whether he found anything with which the tracks might have been made, and, if so to state what he found, and where he found it. It was the right of the defendant, doubtless, to object to the question asked as being too broad. Had he done so, we have no doubt that the court would have found some way to protect him, without excluding evidence to which the State was entitled. The objection being made in such a general way as it was, we do not feel justified in saying that the court erred in not sus-

taining it.  The defendant was not without remedy after the objectionable evidence had slipped in.  He might have moved for its exclusion.  Had he done so, and had his motion been overruled, a very different question would have been presented.

One McCarthy was a witness and allowed to testify that he saw the defendant on his farm in Dallas county between the fifth and fifteenth of June, 1860, which was about two months before the alleged larceny.  The admission of this evidence is assigned as error. While we are not able to see the materiality of this evidence, we have also to say that we do not see how the defendant could have been prejudiced by it.

4. ——: ——: error without preju- dice.

After the evidence was admitted, the witness proceeded to make other statements which, it may be conceded, were objectionable and not without prejudice.  He testified in these words: "The first I saw of him (the defendant), he asked my boy the way to Adel.  He looked up and seemed kind of startled.  Says I: hold on; where do you want to go?  He says: aint there a town west of here by the name of Adel?  Says I: there is; is that where you want to go to?  He said: yes.  I said: how did you get in here?  Says he:  I came off the north road.  I had my suspicions."

5. ——: ——: error waived.

By what question, if any, the testimony as to this conversation, and the witness' suspicions was called out, does not appear.  So far as we can see, the witness simply drifted into the testimony without objection, and we do not see that any motion was made to exclude it.

We are unable to discover any reversible error, and we think that the judgment of the District Court must be

AFFIRMED.