## STATE OF IOWA V. PATRICK BRADY, Appellant.

**Evidence:** RECORD OF RAILROAD. The records made by the agent of railroad companies, showing daily sales of tickets, are admissible as substantive evidence under the same circumstances in which they might be read to the jury by a witness who knew that they were true when made, but has no independent recollection, either before or after examining them, as to the sales to which they refer.

**CLASSIFICATION BY WITNESS.** A witness may—for the purpose of assisting the jury in reaching the inference to be drawn from a comparison of the records of railroad companies, showing the sales of tickets during the time covered by the claims filed against the county by the overseers of the poor for the transportation of paupers with the claims in evidence classify—the claims with reference to the record of tickets sold.

**TABULATION BY WITNESS.** A tabulated statement prepared by an agent of railroad companies, from the companies' records, in evidence, showing the sales of tickets at a certain station during a certain year, and a written statement purporting to be a list of all the names of paupers for whose transportation the overseer filed claims and received county warrants, with dates and destinations prepared by the county auditor from claims, in evidence, are admissible in a prosecution of the overseer for fraudulently making such claim and receiving warrants, and admissible to facilitate a comparison, by the jury, of the records and claims, where the records are complicated and the claims are numerous.

**EXPLANATORY EVIDENCE:** *Prejudice.* Where it is the duty of the state to explain marks upon a paper, in order to make it admissible, it will not be deemed prejudicial error that the witness, in making explanation, was compelled to impress the jury with the facts that the marks were made to check up fraudulent claims charged to have been made by defendants.

**Fraud:** SIMILAR FRAUDS: *Evidence.* All the claims filed with the auditor by an overseer of the poor charged with defrauding the county by filing fraudulent claims for transportation of indigent poor persons, are admissible in connection with evidence tending to show that they were fraudulent, for the purpose of showing his fraudulent purpose in filing the claims upon which the indictment counts, and to show the existence of a systematic scheme or

NOTE.—As to the so-called American doctrine admitting evidence of a writing testified to by witnesses to have been made with knowledge of facts therein stated, but which they cannot now remember, see also *Curtis v. Bradley* (Conn.) 28 L. R. A. 143.

plan to defraud the county, and thus to negative the idea that the filing of the claim in question was accidental. . . .

**Instructions:** "FALSELY" CONSTRUED    An instruction in a prosecution for cheating by false pretenses, which used the word "falsely" to characterize representations which will warrant a conviction, is not prejudiciously erroneous where that word as used in the instruction, manifestly, meant something more than "mistakenly," or "untruly," and the jury must have so understood.

**Challenge to Juror.**    A challenge to a trial juror in a criminal case, is properly overruled where it is based on his testimony that he had read an account of the crime charged against the defendant in the papers, and had heard the matter talked about, and had formed an opinion with reference to defendant's guilt or innocence which it would require some proof to remove, where he further stated that he could render an impartial verdict on the evidence and instructions, without regard to what he had heard and read.

**Objections:** GENERAL AND SPECIFIC.    An objection to the admission of part of the entries on an exhibit, the remainder of which are admissible, is not available, on appeal, where the only objection was to the entire exhibit, on the ground that it was incompetent, immaterial, and secondary.

*Appeal from Wapello District Court.*—HON. F. W. EICHELBERGER, Judge.

THURSDAY, DECEMBER 10, 1896.

DEFENDANT was indicted, tried, and convicted of the crime of cheating by false pretenses, and appeals to this court.—*Affirmed.*

*Steck & Smith* for appellant.

An objection on the ground of incompetency is sufficient, and it is not necessary that the party objecting should state the reasons of the objection. *Greenleaf v. Dubuque & S. C. R. Co.*, 30 Iowa, 302.

The erroneous admission of evidence for the state will not be considered to have been without prejudice, although there is other evidence in the case to the same effect. *State v. Kreder*, 86 Iowa, 25.

When there has been error, presumption of prejudice arises, and if the record fails to satisfy the supreme court that no prejudice ·has been caused, then such error cannot be disregarded.

*Potter v. Chicago, R. I. & P. R. Co.*, 46 Iowa, 399; *Strobel v. Moser*, 70 Iowa, 126; *Reynolds v. Keokuk*, 72 Iowa, 371; *McCormick Harvesting Machine Co. v. Jacobson*, 73 Iowa, 546.

If the defendant received any warrant from the auditor by reason of any false claim or statement, then this was a separate and distinct act, not in any manner connected with his other transactions.

In no event could evidence of other transactions be admitted in evidence for any purpose except that of showing guilty knowledge or intent.

3 Rice, Crim. Ev. section 157; Roscoe, Crim. Ev. 90, 94; *Rex v. Ball*, Russ & R. C. C. 132; *Com. v. Eastman*, 1 Cush. 189 (48 Am. Dec. 596.)

*Milton Remley*, attorney general, *Sumner Siberell*, county attorney, *J. C. Mitchell*, and *W. A. Work* for the state.

DEEMER, J.—During the year 1893, the defendant was the duly appointed and acting overseer of the poor in and for the city of Ottumwa. He was authorized by the board of supervisors to furnish transportation to indigent poor persons found within his jurisdiction, in order that they might be carried to the places of their respective legal settlements, in order that they might not become a charge upon the county of Wapello. For the amounts paid in procuring this transportation, he would file an account against the county, and the county auditor was authorized by the board to issue warrants from time to time for the amount of the claims so filed. During the year for which he was appointed, the defendant filed more than

five hundred and eighty claims for transportation, alleged to have been furnished to paupers, aggregating more than one thousand four hundred dollars. The indictment alleges that on or about the eleventh day of July, 1893, the defendant filed with the auditor of the county, a claim for three dollars for transportation furnished a woman and three little children to Chillicothe, Mo.; that this woman gave her name as Eliza Young, and said she wanted to get to Leavenworth, Kan.; that the defendant, when he filed the claim, knew that he had not furnished any transportation to Chillicothe, Mo., to any woman claiming her name as Eliza Young, and three little children, and that he knew that no woman claiming her name was Eliza Young, had applied to him for transportation to Leavenworth, Kan., or to Chillicothe, Mo., and that he well knew that every recital or statement in his said claim was false; and that he filed the claim designedly, wilfully, and falsely, with intent to defraud, and by such false pretense did obtain from the auditor a warrant for the amount of the claim. There was evidence tending to support each allegation of the indictment, and upon such evidence the defendant was convicted, and sentenced to the penitentiary for the term of two years.

I. The first error assigned relates to the overruling of a challenge interposed by defendant to a trial juror. This juror testified that he had read an account of the crime charged against the defendant in all the papers which made mention of it; that he had heard the matter talked about, and that he had formed some opinion with reference to the guilt or innocence of the defendant, which he still retained; that it would require some showing on the part of the defendant to remove this opinion. The juror further said: "I say I have heard and read of this case. I think I could put aside what I have

heard and read, and go into the trial of this case, and
render a true and impartial verdict upon the evidence
and instructions of the court, and upon that alone,
without regard to what I may have heard and read.
I think I could do that, the same as if I had never
heard of it, but I had rather not sit on the jury. By
the Court: The opinion I formed, I suppose is an
unqualified opinion.   I would try to hear the evidence
in this case, and the instruction by the court, and
render a true verdict, without reference to the opin-
ion, and without reference to what I have read and
heard, and I believe I could." The statements elicited
from this juror were very similar to those appearing
in the case of *State v. Munchrath*, 78 Iowa, 268 (43 N.
W. Rep. 211); and, following that case, we hold that
there was no error in overruling the challenge.

II.   The court permitted the state to introduce in
evidence all the claims filed with the auditor by the
defendant, for transportation claimed to have been
furnished by him to poor persons during the year 1893,
and down to the twelfth day of January, 1894. It also
permitted the state to introduce the records of the
Chicago, Milwaukee & St. Paul Railroad; the Wabash
Railroad; the Chicago, Burlington & Quincy Railroad,
and the Chicago, Rock Island & Pacific Railroad, show-
ing, or purporting to show, the ticket sales in their
respective offices at the city of Ottumwa during
the year 1893.   The admission of this evidence
is complained of.   It is said in argument that
it is not competent for the state to give in evidence
facts tending to prove other distinct offenses, for the
purpose of raising an inference that the defendant has
committed the crime in question; nor is it competent
to show that he has a tendency to commit the offense
with which he is charged.   That such is the general
rule, must be conceded.   But to this rule there are at
least two well defined exceptions, which are well stated

by Justice Stephen, in his work on Evidence (articles 10–12), as follows: "A fact which renders the existence or non-existence of any fact in issue probable by reason of its general resemblance thereto, and not by reason of its being connected therewith in any of the ways specified in articles 3–10, both inclusive, is deemed not to be relevant to such fact, except in the cases specially excepted in this chapter. (11) *Acts Showing Intention, Good Faith, etc.* When there is a question whether a person said or did something, the fact that he said or did something of the same sort on a different occasion, may be proved, if it shows the existence, on the occasion in question, of any intention, knowledge, good or bad faith, malice, or other state of mind, or of any state of body or bodily feeling, the existence of which is in issue, or is deemed to be relevant to the issue; but such acts or words may not be proved merely in order to show that the person so acting or speaking was likely, on the occasion in question, to act in a similar manner. (12) *Facts Showing System.* When there is a question whether an act was accidental or intentional, the fact that such act formed part of a series of similar occurrences, in each of which the person doing the act was concerned, is deemed to be relevant." The first of these exceptions we have frequently recognized and applied to cases of this character. See *State v. Jamison*, 74 Iowa, 613 (38 N. W. Rep. 509); *State v. Walters*, 45 Iowa, 389; *State v. Saunders*, 68 Iowa, 370 (27 N. W. Rep. 455); *State v. Stice*, 88 Iowa, 27 (55 N. W. Rep. 17); *State v. Lewis*, 96 Iowa, 286 (65 N. W. Rep. 295); *State v. Kline*, 54 Iowa, 183 (6 N. W. Rep. 184). The evidence we have referred to is clearly admissible under the first of these exceptions stated above, for the purpose of showing the knowledge, intention, and bad faith of the defendant. It seems to us that the evidence was also admissible for the purpose of proving a systematic

scheme or plan on the part of the defendant to cheat and defraud the county, thus negativing the idea that the presentation of the claim in question, was accidental, or through oversight, or mistake. 1 Greenleaf, Ev. (15th Ed.) section 53, note, and cases cited; *Commonwealth v. Robinson* (Mass.) (16 N. E. Rep. 452). The jury may well have found, from the evidence complained of, that the filing of the claim, and the receipt of the warrant charged in the indictment, was a part of a plan, or scheme, adopted by the defendant to cheat and rob the county. For this purpose, as well as for the purpose of establishing the defendant's knowledge of the falsity of the claim, the evidence was admissible.

III. The claims filed by defendant, and which were introduced in evidence, had blue lead pencil checks and figures upon them, which it is admitted were not there when defendant presented them to the auditor. The state introduced a witness to account for these figures, in the person of the deputy county auditor. He testified that he placed the marks and characters upon the claims, and that he did it for the purpose of showing that where he made checks he found no tickets sold, on the date of the claim, to the station to which transportation was claimed to have been furnished; and that, where he had made figures, they were put on to show that the actual railway fare was either more or less than the amount claimed by the defendant. Error is assigned upon the admission of these claims in evidence, because of the presence of these marks. We do not think the objection was well founded. It was necessary for the state to satisfactorily account for these marks upon the papers, before they could be received in evidence. This it did by the evidence in question, and, while it was permitted to unduly impress upon the minds of the jury the object and purpose of the witness,

in putting the marks and characters upon these papers, yet we think such evidence was not prejudical, for reasons hereafter to be stated.

IV. Complaint is made of the ruling of the court in admitting what is known as Exhibits 7 and 13, to the jury. Exhibit 7, is a tabulated statement made by one Patten, the agent of the Chicago, Milwaukee & St. Paul and the Wabash and Iowa Central Railroads, from the records of said companies, showing sales of tickets at Ottumwa during the year 1893, which were introduced in evidence after having been properly identified. Exhibit 13, was a written statement prepared by the auditor, and his deputy, and purports to be a list of all the names of all paupers for which defendant filed claims for transportation, and received county warrants thereon, during the year 1893, and up to January 12, 1894, also the dates upon which the transportation was furnished, and places to which paupers were claimed to have been sent, and the amount paid for transportation. This statement was made up from the claims introduced in evidence, which aggregated more than five hundred. The records from the ticket offices were necessarily long, and somewhat complicated, as they covered the ticket sales of the different offices for the period of nearly one year. It is said that these exhibits were not the best evidence,—that they were secondary, hearsay, and incompetent It is no doubt true that they were not substantive evidence tending to establish either the number or amount of claims filed by the defendant, nor of the number of tickets sold by the different railway companies. They were simply tabulated statements, made by competent persons, taken from voluminous and numerous claims and records which were already in evidence, made for the purpose of assisting the jury in arriving at their verdict. As such, they were competent, *State v,*

*Cadwell.* 79 Iowa, 432 (44 N. W. Rep. 700); 1 Rice, Ev. p. 237; *Von Sachs v. Kretz,* 72 N. Y. 548; Bradner, Ev. pp. 308-310; *Casey v. Banking Co.,* 98 Iowa, 107 (67 N. W. Rep 98); 2 Rice, Ev. pp. 745, 746, and cases cited.

V   As to the first thirty-one entries on Exhibit 13, there is no evidence showing, or tending to show, that no tickets were sold to the persons indicated on this exhibit; for Mr. Van Patten did not take charge of the railway offices until March 24, 1894, and all that portion of Exhibit 7, antedating March 24, was withdrawn from the evidence. The objection defendant made to the exhibit when it was offered by the state did not point out the claim now relied upon by the defendant. His objection was that it was incompetent, immaterial, secondary, and not the best evidence; not evidence of anything. Had the defendant made a specific objection to that part of the exhibit referred to, there is no doubt the court would have found some way to protect him without excluding evidence to which the state was entitled. Not having done so, he cannot now complain. *State v. Day,* 60 Iowa, 100 (14 N. W. Rep. 132); *Rindskoff v. Malone,* 9 Iowa, 540. But, aside from all this, we think it clearly appears that the defendant suffered no prejudice from the ruling. This exhibit was merely a tabulated statement of the claims filed with the county by the defendant, and. if there was nothing to indicate that these first thirty-one claims were fraudulent, it is difficult to see how the defendant could nave been prejudiced. The presumption would be that the claims were *bona fide.* Just how defendant would be prejudiced by proof of *bona fide* claims filed by him, we are unable to see.

VI.   Another witness was permitted to classify the claims filed by the defendant, to state the aggregate amount thereof. the total number of fares claimed to Chillicothe, Mo., and the amount of the

fare claimed in each instance. He was also allowed to state what the actual fare was to the various points where defendant claimed to have sent paupers, and, finally to, give the difference between the amount of fare claimed by defendant, and the actual charge made by the railway companies. Most, if not all, of the testimony of this witness, was based upon his examination of the various papers in evidence; and we do not think the trial court abused its discretion in allowing such evidence to be introduced for the purpose of facilitating the trial, and aiding the jury in their efforts to arrive at just results. This practice seems to be justified by the authorities before cited, and we can see no good reason for disturbing the verdict on account of this procedure. The same reasoning will apply to the evidence of the deputy auditor, who made the pencil marks upon the claims filed by the defendant, to which we have before referred. It must be borne in mind that the records, statements, and claims from which these witnesses made their statements, and upon which they founded their conclusions, were all properly in evidence, and open to the inspection at all times of defendant and his counsel. This original evidence went into the jury room, with the exhibits before referred to; and, if there were any discrepancies, it was the duty of counsel to have called attention thereto, in order that the original records and claims might be examined, in order to determine upon the accuracy of these exbibits. While the course pursued was somewhat unusual, yet the procedure seems to be sustained by authority, and we do not think that we ought to interfere with the discretion of the trial judge in such matters, especially where, as in this case, no prejudice is shown.

VII. It is contended that the lower court erred in admitting the records from the ticket offices, showing

daily sales at the city of Ottumwa during the year 1893. This claim presents the question of most doubt in the case. It must be conceded that these records are not books of account such as the statute contemplates. They are, in a sense, *ex parte* statements made and caused to be made by the witnesses who identified them, and are what might properly be termed "memoranda," made by the witnesses at the time of the transaction. Are these memoranda admissible in evidence, or can they be used by the witnesses who produced them, simply, as an aid to their recollection? This question has been given widely different answers by the courts of this country and of England. [The old common law rule seemed to be that such memoranda were not admissible; that they could be read by the witness after proper foundation had been laid, even though the witness had no recollection of the matters, even after having read them. The modern doctrine, at least in this country, seems to be that such documents are admissible in evidence, and that the court will not go through the useless ceremony of having the witness read a document relating to a fact of which he had no present recollection, except that he knew it was correct when made. The previous holdings of this court on the question do not seem to be in entire accord upon the question. See *Taylor v. Railroad Co.*, 80 Iowa, 431 (46 N. W. Rep. 64); *Bank v. Novack*, 97 Iowa, 270 (66 N. W. Rep. 186); *Adae v. Zangs*, 41 Iowa, 536. Without attempting to reconcile these cases, we think it sufficient to say that we are constrained to apply the modern—so-called American—rule to this case, and hold that the records were admissible. The evidence showed that the agent of the Chicago, Milwaukee & St. Paul, and the Wabash and Iowa Central Railroads kept a daily record of the tickets sold at his office, over the respective lines which he represented; that he was required to do so by a

rule or regulation of the several companies; that he kept the record introduced in evidence as "Exibit 8," from March 24, 1893, to January 10, 1894. This record stated to what stations the tickets were sold, and the day of the sale. The agent of the Chicago, Burlington & Quincy Railroad testified that he used a machine in selling tickets over his line, in which there were two pieces of paper. This machine prints a ticked when called for, upon a piece of paper, and at the same time printed a stub, which was, in effect a duplicate of the ticket sold. This stub was sent in to the main office of the railway company, as a record of sales. He also testified that this machine printed a register at the same time. The witness presented this record made by the machine for the year 1893, printed upon the stubs before referred to, and it was introduced in evidence. · This same witness was also agent for the Rock Island Railroad Company, and he testified that he personally kept a record of the tickets sold over this road during the year 1893, and that the record was correctly kept. This record was also introduced in evidence. Now, it is clear from this statement of the case that none of these witnesses could remember the number of tickets sold by them during the whole year, and it would be absolutely impossible for them to remember with certainty the places to which they sold tickets on any particular day. They would have to rely upon these records, which they identified. It is conceded that they might rely upon them, and might have read from them to the jury, although they may not have been able to remember a single sale. To use the language of Hamersley, J., in the case of *Curtis v. Bradley*, from the supreme court of Connecticut, reported in 28 L. R. A. 143 (31 Atl. Rep. 594): "It seems to us to be pressing the use of a legal fiction too far for a court to permit the statement made by such paper

to be read in evidence, while holding that the law forbids the admission as evidence of the paper which is the original and only proof of the statement admitted. In other words, it would seem as if, in admitting the paper to be read, the court, of necessity, admitted the paper as evidence, and therefore, by the concurrent authority of all courts, the paper is itself admissible." The learned judge further said: "All courts rightly hold that the thing used to refresh the memory is not, by reason of such use, itself admissible in evidence. When, in the application of the rule, a document like the one in question was presented to a witness, and absolutely failed to refresh his memory, its exclusion as a means of refreshing his memory became imperative, but the evidence of the document was so clearly essential to a fair and just trial, that its use in some form seemed absolutely imperative. Instead of treating the paper as itself competent documentary evidence, resort was had to a palpable fiction. The paper is read by the witness, and the knowledge the witness once had of the facts stated by the paper is imputed to him as still existing, and the statement of the paper is received as the testimony of the witness, and the paper itself—the only witness capable of making the statement—is excluded. The use of such a fiction in the administration of justice can rarely, if ever, be justified. It is certainly uncalled for in this instance. The principles of law involved to justify the fiction are amply sufficient to support—indeed, to demand—the admission of the document as evidence. There is no occasion to sacrifice truth in order to secure justice, as regards its admissibility as evidence. There is no substantial difference between this paper and any other tangible object capable of making a truthful and relevant statement." This reasoning is so cogent and logical that we adopt it as peculiarly applicable in

the case at bar, and need do nothing further than cite the following additional authorities in support of the rule:  *Guy v. Mead,* 22 N. Y. 462; *Haven v. Wendell,* 11 N. H. 112; *Owens v. State,* 67 Md. 307 (10 Atl. Rep. 210, 302); *Donavan v. Railroad Co.* (Mass.) (33 N. E. Rep. 583); *People v. Dow,* 64 Mich. 717 (31 N. W. Rep. 597); 2 Rice Ev. pages 748-751.    There was no error in the admission of this evidence.

VIII.  The court, after specifically instructing the jury that the defendant was on trial for the one offense charged in the indictment, and no other, and that, if found guilty, it must be on this specific charge, concluded this paragraph of the charge as follows: "You may and should, therefore, consider all evidence, if any there is, which tends to show that defendant had obtained other warrants from Wapello county by falsely representing that he had transported other paupers, to aid you in determining whether or not he falsely represented in this case that he had transported a woman calling herself Eliza Young, and her children, to Chillicothe, Mo., and whether or not such representations, if made by him, were fraudulently and falsely made, with the intent to obtain a warrant in this case."  Complaint is made of this last sentence in the instruction.  We have already sufficiently indicated our views with reference to this matter, and need only say that the word "falsely," as used in the instruction, manifestly meant something more than "mistakenly," or "untruly." The jury, in reading this instruction in connection with the others, could not fail to have construed the word to mean something designedly untrue or deceitful, and as involving an intention to perpetrate some fraud.    This construction of the instruction was proper.    The fourth instruction asked by the defendant, relating to the same matter, was properly refused because it practically withdrew all evidence as to

similar offenses, from the consideration of the jury. As sustaining the instruction, see authorities before cited, as well as the following case:   *Commonwealth v. Blood* (Mass.) (6 N. E. Rep. 769).

The alleged misconduct of counsel for the state in his address to the jury is not considered, because not properly made of record.   Other questions discussed by counsel are disposed of by what had already been said, and we conclude by saying that we discover no prejudicial error, and the judgment is therefore AFFIRMED.