# John Koch, Defendant in Error, v. Gustaf Pearson, Plaintiff in Error.

## Gen. No. 25,345.

1.  AUTOMOBILES AND GARAGES, § 3*—*when evidence in collision case must be limited.* In an automobile collision case, it was error to admit evidence as to both the reasonable cost of the repairs and the difference between the values before and after the accident, without some instruction covering the question of the proper measure of damages.

2.  AUTOMOBILES AND GARAGES, § 3*—*what damages are recoverable in action for collision.* Where, in an automobile collision case, plaintiff and his car were injured, plaintiff was entitled to recover what he necessarily and reasonably spent in an endeavor to repair the car, provided it was reasonable to suppose the car could be' repaired; also the difference in value between what the car was worth before the accident and after it was repaired; also what plaintiff lost by reason of being unable to carry on his business.

3.  EVIDENCE, § 374*—*who may testify as to speed.* In an automobile collision case, it was error to refuse to permit the policeman who was near the point of collision to testify as to the speed at which defendant's car was traveling, the rule being that one not an expert may testify in such case.

4.  EVIDENCE, § 236*—*when policeman's report is admissible as to collision.* In an automobile collision case, it was error to refuse to admit in evidence a policeman's report made out by the officer immediately after the accident, where such officer testified that the report did not refresh his recollection but that it was in his handwriting and was true when he made it.

5.  EVIDENCE, § 236*—*what is effect of statement in policeman's report of collision.* Quære as to the effect of a statement in a police officer's report, as to an automobile collision, that no one was injured.

Error to the Superior Court of Cook county; the Hon. M. L. McKINLEY, Judge, presiding. Heard in this court at the October term, 1919. Reversed and remanded. Opinion filed November 4, 1920.

GEORGE B. COHEN, for plaintiff in error.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

WILLIAM B. O'BRIEN and J. J. SCHWARTZ, for defendant in error; JAMES C. BYRNE, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought suit against defendant to recover damages claimed to have been sustained by him by reason of an automobile collision. There was a verdict and judgment in his favor for $2,000, to reverse which defendant prosecutes this writ of error.

The record discloses that on August 2, 1916, plaintiff was driving his automobile in a southeasterly direction in Elston Avenue, Chicago, and that when he was crossing Logan Boulevard, which intersects Elston Avenue, his automobile was struck by defendant's, damaging plaintiff's machine and injuring him.

On August 21, 1916, plaintiff filed a præcipe in the clerk's office of the superior court claiming damages in the sum of $2,500 and praying that a summons issue, which was accordingly done. On September 22, 1916, a declaration was filed consisting of five counts in each of which it was averred that plaintiff's automobile was worth $1,500; that it was damaged by being struck by defendant's automobile, and that as a result plaintiff was required to expend $700 in an endeavor to repair it. Each of the counts also claimed damages in the sum of $5,000. On October 5, 1916, defendant was defaulted for want of appearance. During the same term, on motion of defendant, this default was set aside and vacated, and a plea of not guilty filed. Afterwards, on May 28, 1918, the cause came on for trial and there was a verdict in favor of plaintiff for $1,000. Defendant made a motion for a new trial which was allowed on June 6, 1918, and a new trial awarded. Afterwards, on June 17, 1918, by leave of court, plaintiff filed an amended declaration which was substantially the same as the original declaration ex-

cept that it was claimed that the automobile was worth $2,500 at the time of the accident. The case was again tried in February, 1919, and there was a verdict and judgment in favor of plaintiff for $2,000. Since there must be a retrial of this case, we will refrain from discussing the evidence except in so far as it may be necessary to set forth our reasons for reversal.

It appears from the evidence that plaintiff owned the automobile and was using it in the taxicab business; that he was often employed by a funeral director and at other times had a stand down town; that he used the automobile in his business 24 hours a day, operating it himself in the daytime and employing another man to operate it for him in the nighttime. The evidence also tended to show what plaintiff earned by the operation of the automobile for a year prior to the accident; that about 4 o'clock in the afternoon of August 2, 1916, plaintiff was returning from a funeral driving his machine in Elston Avenue; that as he crossed Logan Boulevard, which intersects Elston Avenue, defendant's machine struck plaintiff's, damaging it and injuring the plaintiff; that as a result of this, plaintiff, in an endeavor to repair the machine, expended the sum of about $288, and that on account of the injuries sustained by him he was unable to work for about 6 weeks; that after the repairs were made to the machine it would not operate satisfactorily and he traded it in for another machine, being allowed $600 for it. Plaintiff testified that the car at the time of the accident was worth $2,000; that he had bought it as a second-hand machine, although practically new, some months before the accident and had paid $1,900 for it. In view of all this, we might say in passing that the judgment seems excessive.

Plaintiff claims that the accident occurred through the sole fault of the defendant and, therefore, he was entitled to recover damages for the injuries he suffered, for the money he expended in endeavoring to

repair the machine, and for the loss he sustained by reason of being unable to carry on his taxicab business.

As is usual in such cases, there was a sharp conflict in the evidence as to the rate of speed at which both machines were going at the time of the accident. Plaintiff's evidence tended to show that he was operating his machine at a slow rate of speed, while defendant was going very rapidly. Evidence offered on behalf of defendant tended to show that the contrary was the fact.

Defendant contends that the proper measure of damages was not applied. He says that the court erred "in failing to limit the damages to the automobile to one theory or the other: either the reasonable cost of the repairs or the difference between the values before and after the accident. It was error to admit proof as to both kinds of damages without some instruction covering the point."

We think that if plaintiff is entitled to recover in this case his damages should be what he necessarily spent, provided it was reasonable, in an endeavor to repair the car, provided it further appeared reasonable to suppose that the car could be repaired. He was also entitled to recover as an element of damage the difference in value between what the car was worth before the accident and after it was repaired, because it is seldom, if ever, that a car can be repaired so as to make it as good as it was before it was damaged. A further element of damage would be what the plaintiff lost by reason of being unable to carry on his business, and we think that the evidence introduced by plaintiff tending to show what he had earned in the taxicab business the year before the accident was proper to be considered in this regard.

Defendant also contends that the court erred in refusing to permit the policeman who was near the place of the accident to testify to the speed at which defendant's car was traveling. The court apparently

refused to permit this witness to so testify on the ground that he was not qualified as an expert. This was error. One not an expert may testify in such case. *Heidenreich v. Bremner*, 176 Ill. App. 230.

It is also argued that the court erred in refusing to admit in evidence a report of the accident as made out by the police officer immediately after it occurred. It appears that the policeman was about 150 feet from the place of the accident and that he immediately went back to the two machines, spoke to the drivers, and made a written report. Upon the trial he examined the report to see if it would refresh his recollection as to what occurred and if he could then testify to the facts. He testified, upon examination, of the report, as to some of the matters therein stated, that it did not refresh his recollection, but that the report which was in his handwriting was true when he made it. The report was then offered but upon objection was excluded. We think this was error. Where a witness testifies that he made a written report or memorandum of the occurrence at or near the time of its happening, but that upon examination of it he has no present recollection of the matters therein stated except that he knows that it is correct, then such report or memorandum is admissible in evidence. 1 Wigmore on Evidence, secs. 754, 800, 734; 1 Greenleaf on Evidence (16th Ed.), sec. 439(b); Best on Evidence (3rd Am. Ed.), p. 219; 2 Elliott on Evidence, sec. 872; *Halsey v. Sinsebaugh*, 15 N. Y. 485; *Acklen's Ex'r v. Hickman*, 63 Ala. 498; *Davis v. Field*, 56 Vt. 426; *Mineral Point R. Co. v. Keep*, 22 Ill. 9; *Kent v. Mason*, 1 Ill. App. 466; *State v. McGruder*, 125 Iowa 741; *State v. Brady*, 100 Iowa 191; *Koehler v. Abey*, 168 Mich. 113; *Johnson v. Union Carbide Co.*, 169 Mich. 651; *Alabama Great Southern R. Co. v. Clarke*, 145 Ala. 459; *Manning v. School District*, 124 Wis. 84; *Territory v. Harwood*, 15 N. M. 424.

In speaking of the admissibility of "past recollec-
tion recorded," Professor Wigmore says (section
734): "The situation is one in which the witness is
devoid of a present recollection, and therefore desires
to use a past recollection. This he proposes to do by
employing some record of this past recollection and
adopting it as his present statement. Thus, he says:
'I made a correct memorandum of this conversation
while my recollection was fresh; I now remember
nothing, but can offer my prior recollection as em-
bodied in the memorandum.' * * * It must appear
that the witness had a good recollection when it was
recorded, but that is all that is required by the canons
of Recollection."

Continuing he says: "Broadly, then, we have to
provide, in using a record of past recollection, for cer-
tain practical tests of the accuracy and identity of the
record; furthermore, we must require some guarantee
that the past recollection thus recorded was a satis-
factory one, e. g. that it was recorded at or about the
time of the events; we may be asked to declare that
in any case a present recollection is always preferable
to a past one, and that hence the lack of a present
recollection must first be expressly ascertained; and
it will also be found that historically there has been
much confusion, great delay, and possibly an occa-
sional refusal to allow the use of a past recollection
at all." The author then says that the use of a past
recollection as evidence has on many occasions been
vindicated by the courts of this country as well as of
England, and in the note cites *Halsey v. Sinsebaugh,*
15 N. Y. 485, where it is said: "The efforts of memory
are seldom equal to the task of recalling after any
considerable lapse of time even the exact substance
of words and phrases. * * * To exclude such a
record, when honestly made, would be to reject the
best and frequently the only means of arriving at the
truth." In *Acklen's Ex'r v. Hickman,* 63 Ala. 498, it

was held that where "the witness after examining the memorandum cannot testify to an existing knowledge of the fact, independent of the memorandum,—in other words, cases in which the memorandum fails to refresh and revive the recollection and thus constitute it present knowledge * * * (if the witness) testify that at or about the time the memorandum was made he knew its contents and knew them to be true, this legalizes and lets in both the testimony of the witness and the memorandum. The two are the equivalent of a present positive statement of the witness affirming the truth of the contents of the memorandum." *Davis v. Field*, 56 Vt. 426, it was said: "Nor was it necessary that the witness should have had an independent recollection.. * * * The old notion that the witness must be able to swear from memory is pretty much exploded. All that is required is that he be able to swear that the memorandum is correct. There seem to be two classes of cases on this subject: (1) Where the witness by referring to the memorandum has his memory quickened and refreshed thereby, so that he is enabled to swear to an actual recollection; (2) Where the witness after referring to the memorandum undertakes to swear to the fact, yet not because he remembers it, but because of his confidence in the correctness of his memorandum. In both cases the oath of the witness is the primary, substantive evidence relied upon; in the former the oath being grounded on actual recollection, and in the latter on the faith reposed in the verity of the memorandum." The author continuing (section 736, p. 832) says: "In Illinois the use of a past recollection is undoubtedly intended to be sanctioned." Section 754, the author says: "If by verifying and adopting the record of past recollection the witness makes it usable testimonially, and if by this verification alone can it become so usable, it follows that the record thus adopted becomes to that extent the embodiment of the witness'

testimony.  Thus, *(a) The record, verified and adopted, becomes a present evidentiary statement of the witness; (b) and as such it may be handed or shown to the jury by the party offering it.*   *   *   *   A few decisions declare that the writing is not 'independent evidence'; but this is to be construed as meaning merely—what no one could deny—that without being verified and adopted   *   *   *   it is without standing.  A few others expressly refuse to allow it to be 'read in evidence' or 'given in evidence.'  But these must be regarded as unsound in principle.''  Section 800, it is said:  ''When a witness uses in his testimony a record or memorandum of his past recollection, he virtually adopts it as part of his present deliverance; it becomes a written statement of his present assertion, and as such it may be read and shown to the jury.''

In 1 Greenleaf on Evidence (16th Ed.), sec. 439(b), it is said:  '' (1)  The record (memorandum, note, entry, etc) must have been made *at or about the time* of the event recorded.  Whether in a given case it was made so near that the recollection may be assumed to have been then sufficiently fresh must depend on the circumstances of the case.  (2)  The witness need not have *made the record himself;* the essential thing is that he should be able to guarantee that the record actually represented his recollection at the time, and this he may be able to do, either by virtue of his general custom in making such records, or (as in the common case of an attesting witness) by his assurance that he would not have made the record if he had not believed it correct.   *   *   *   Since the witness has verified and adopted the record as representing his knowledge on the subject, it becomes a part of his testimony, 'just as if without it the witness had orally repeated the words from memory,' and may therefore be read aloud by him and shown to the jury, or other-

wise be put in evidence. A few courts speak of the writing as 'not in itself evidence,'—meaning apparently—what cannot be denied—that it has no standing except as verified and adopted by the witness. A few others expressly refuse to allow it to be 'read in evidence' or 'given in evidence'; but this must be regarded as erroneous."

In Best on Evidence (3rd Am. Ed.), p. 219, the author says: "Strictly speaking, the memorandum which refreshes recollection must result in a present memory of the facts covered by it. Such a memorandum is in frequent use. A memorandum which refreshes no further recollection than that it was accurate when made according to a then present knowledge is really incorporated with the evidence, and made a part of it. As such, it is evidently entitled to be received in evidence as constituting, as it were, an extension, amplification, or explanation of the evidence of which it is a part. * * * The memorandum verified to a certain extent by evidence of a now forgotten knowledge is accepted, in pursuance of the administrative principle that a party may offer the best evidence he can. * * * Its use is sanctioned in several jurisdictions."

In 2 Elliott on Evidence, sec. 872, the author says: "If the witness, after referring to the memorandum, is able to recollect the fact recorded, that is, if his memory is revived so that he remembers the fact, and can testify to it independently of the memorandum, then the memorandum is not admissible in evidence, unless it is admissible for some other purpose under some other rule. In other words, the memorandum cannot be put in evidence in corroboration of the recollection of the witness. But if the witness, after referring to the memorandum, does not have his memory revived, but swears to the fact recorded not because he remembers it, but because of his confidence that the memorandum is correct, in such case the memoran-

dum is generally held to be admissible in evidence. In such cases the witness cannot testify to an existing knowledge of the fact recorded, independently of the memorandum, but he testifies that, at the time the memorandum was made, he knew it to be correct, and it is held that the oral testimony of the witness, and auxiliary thereto, the original memorandum, are admissible, since they together are the same as the present positive statement of the witness. But such a memorandum is not usually considered as of itself admissible as independent evidence, unless it falls under some other rule of admission, as the general rule, as we have stated it, although supported by the weight of authority, is somewhat questionable on principle."

In *Mineral Point R. Co. v. Keep*, 22 Ill. 9, it was held that a witness might read from written minutes made by him on a former trial of the testimony of a witness since deceased. The court there said (p. 20): "This court has laid down no rule as to the degree of con- nection required between notes and memory, and we are at liberty to adopt such an one as may be reasonable and just. * * * Here the minutes of the evidence taken by counsel were not offered as evidence *per se*— he was sworn to their correctness and read from them without objection. What better evidence of the testimony of a deceased witness could there be, than correct notes of it taken at the time? It fulfills one of the most important requirements of the law, that the best evidence shall be produced in the power of the party to produce. * * * It seems to us that such minutes sworn to be correct are far better and more satisfactory as evidence than the imperfect and fleeting recollection of any man could possibly be, and we do not feel the force of a reason which shall require us to reject a higher for an inferior grade of testimony. It must be recollected, that the witness detailing the testimony of the deceased, is not called to testify to any fact in

the case, but only to the fact as to what the deceased witness swore, and if he swears that he made full notes of his testimony at the time, and that they are correct, we see no reason why he should not read them to the jury, as the best evidence of the fact to which he is called to depose." The court then discusses the authorities and continues: "We think written notes made by the counsel for one of the parties in the cause, and sworn to be correct, are more reliable than testimony resting in memory merely."

In *Kent v. Mason*, 1 Ill. App. 466, the court said (p. 471): "That a witness may refer to a memorandum made by him to refresh his recollection is a familiar principle. But the memorandum itself is not admissible in evidence except in cases where the witness, at the time of testifying, has no recollection of what took place other than that he accurately reduced the whole transaction to writing. 1 Greenleaf on Evidence, sec. 437."

In *State v. McGruder*, 125 Iowa 741, it was held that a record kept by a school-teacher of the standing of defendant in his studies was properly admissible in evidence. It is there said: "It is not to be supposed that the witness could recall the markings, even after refreshing her memory, and in such cases the record is now admitted, instead of the oral recital formerly exacted."

In *State v. Brady*, 100 Iowa 191, it was held that the records made by a railroad agent showing the sale of tickets were admissible, the party making them having no independent recollection. It was there held that the records thus made should go to the jury, the witness having guaranteed their accuracy.

In *Koehler v. Abey*, 168 Mich. 113, it was held that a written memorandum used to refresh the recollection of a witness is not admissible as further substantive evidence of the fact, but when the witness'

recollection is not refreshed by an examination of the memorandum, and it is shown that the memorandum is accurate, it is competent evidence. In that case it was held that the memoranda made by the State Factory Inspector in the discharge of his duties were admissible in an action for personal injuries where it was claimed that there was dangerous machinery left unguarded. The court there discussed the authorities and said: "If he had testified that the writing refreshed his recollection, so that he had a present recollection of the fact sought to be established, the writing would not have been admissible as further substantive evidence of the fact. In such a case it is the testimony of the witness, the recollection, which is evidence, not the document or writing used to refresh recollection." The court there quoted with approval from an opinion delivered by Judge Cooley (27 Mich. 454), as follows: " 'Had Draper testified to any present recollection of what these witnesses swore to, he would have been allowed to state what it was. But clearly his minutes taken at the time, and which he swore were correct, were much less liable to err than any recollection he might have could possibly be. His minutes embodied his understanding of the evidence at the time, and would remain the same, and not become varied in the lapse of time; but his recollection, which would start with the same understanding, was constantly liable to be more or less perverted and changed, or in material parts obliterated from the memory. * * * Any rule of evidence which would admit the recollection and exclude the minutes must obviously be illogical and unsound. We approve, in this regard, of * * * *Halsey v. Sinsebaugh*, 15 N. Y. 486, which we think lay down the true rule, and explain the origin of some misapprehensions regarding it.' " The Michigan court also quoted with approval from the *Halsey* case as follows: " 'That an original memorandum, made by the witness presently after the facts noted

in it transpired, and proved by the same witness at the trial, may be read by him, and is evidence to the jury of the facts contained in the memorandum, although the witness may have totally forgotten such facts at the time of the trial.'" The court there further said: "It must be kept in mind that the discovery, and not the suppression, of material facts is the purpose of the court, and that a party litigant has the right to prove material facts by competent evidence. Under the rule which has been stated, this book was competent evidence of the recorded fact, although the witness had forgotten the fact, if the accuracy of the record was established." This case was followed in *Johnson v. Union Carbide Co.*, 169 Mich. 651, where it is said (p. 660): "This court, in a recent case where the question of the admissibility in evidence of memoranda made by a witness at the time of the happening of the event under inquiry, held that upon reason and authority such a memorandum would be competent evidence of the facts therein recorded, if its verity as a record of fact is sufficiently established. *Koehler v. Abey,* 168 Mich. 113."

In *Manning v. School District,* 124 Wis. 84, it was held error for the trial court to exclude the diary in which the witness noted down from day to day the condition of the weather and which diary, he was able to testify, was correct. The trial judge did not permit the witness to testify on the theory that a witness could not testify with the aid of the memorandum unless after referring to it he could testify from present recollection. This was held error. The court said (p. 97): "This court has held otherwise on many occasions, in harmony with most if not all elementary authorities on the subject," citing authorities. It was there held that this rule applied to a mere private memorandum, for, as the court said: "There is no good reason for not so extending it, where the competency of the witness is clearly established by his positive

testimony as to present recollection that when he made the memorandum it was in accordance with the truth as he then knew the fact to be.'' The court, continuing, quoted with approval from 3 Jones on Evidence, sec. 884: '' 'It is now well settled that a memorandum or writing may be used by the witness, not only when he can swear from actual recollection, but in some cases where the witness, after referring to such writing, can swear to a fact, not because he remembered it, but because of his *confidence in the correctness of the writing.* * * * Although it is clear that the document is not admissible as evidence when it so recalls the facts to the mind of the witness that he remembers them and can testify from his actual recollection, it has frequently been held that *another rule prevails when the witness,* after examining the memorandum, *cannot testify to an existing knowledge of the fact, independently of the memorandum, but can testify that,* at or about the time the writing was made, *he knew of its contents and of their truth* or accuracy.' '' Continuing, the court said (p. 99): ''Not only was it permissible for the witness to testify from the memorandum when the only remembrance he had on the subject was that it was correctly made, but it was proper to receive the memorandum in evidence as part of the witness' testimony.''

In *Territory v. Harwood,* 15 N. M. 424, it was held that the record of the baptism of a child made by a priest was competent evidence to establish the age of the child provided the priest testified the record was correct. The court there said that if the witness, after consulting such record, was not refreshed in memory so as to bring the facts to his present knowledge, the testimony was not necessarily lost. ''He may still, if he can, testify that the memorandum was made at the time when recollection was fresh, and that when so made it spoke the truth. Then according to the ancient practice, he might state or read its contents

to the jury," citing authorities, "Or, according to the weight of authority, the paper might be introduced in evidence."

In the instant case the police officer testified that he made a report at the time and that it was correct. The court ruled this out apparently on the theory that such a report could only be used for the purpose of refreshing the witness' recollection, and that it could not be used as evidence in any circumstances. Under the authorities which we have cited, we think it clear that the court erred, for it appeared from the testimony of the officer that after he had examined the report it did not refresh his recollection, but that he knew he made it at the time and knew it was correct. This was sufficient to permit the report to be received.

In our opinion the memorandum involved in the instant case was admissible although it contained the words "No one injured" written by the policeman. Those words cannot be considered as a statement of the officer's opinion, but rather as a statement of fact based upon appearances which he observed and recorded at the time, or the statements made to him by the parties.

Complaint is also made that the court unduly limited counsel for defendant in the cross-examination of certain witnesses, and that certain rulings of the court were otherwise prejudicial. We have examined this proposition and find that while a number of questions put by counsel were not technically correct, yet, upon the whole, the trial court should have given him more latitude.

The judgment of the superior court of Cook county is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

THOMSON, J., concurs.

TAYLOR, P. J., specially concurring:

The report of the police officer contained the following: "Nature and extent of injury: None," and

the following: "Cause of Accident. An automobile driven & owned by Gustaf Pearson coming southwest on Logan Boul. ran into the left side of an auto driven & owned by John Koch going southeast on Elston Ave., and the left running board & left front & rear fender of John Koch's machine broken, the front two fenders & frame of Gustaf Pearson's machine broken. No one injured." The question arises whether the words "Nature and extent of injury: None," and the last words "No one injured" made the document to that extent incompetent. It would seem, at first blush, that to allow the police officer to testify to the "nature and extent of injury," if any, and that no one was injured, would be in violation of the rule of evidence as to matters of opinion, but upon close analysis it is found that, when legally considered, all that was stated on the subject of injury were matters of fact.

In *City of Aurora v. Hillman,* 90 Ill. 61, the court, in passing upon the question: "State whether or not, from what you saw at this time, Hillman and Moreau, or either of them, was, in your opinion, under the influence of liquor," used the following language: "Intoxication or drunkenness is a fact which may be proven as other facts are proven. A witness, by observation and by the exercise of his perceptive faculties, his five senses, can learn and know facts, and such facts he may state.  *  *  *  Facts which are latent in themselves, and only discoverable by way of appearances more or less symptomatic of the existence of the main fact, may, from their very nature, be shown by the opinions of witnesses as to the existence of such appearances or symptoms. Sanity, intoxication, the state of health or of the affections, are facts of this character."

In *West Chicago St. Ry. Co. v. Fishman,* 169 Ill. 196, where the question and answer were, "How did you find him," "I found him very ill," the court said: "Witnesses not experts are, however, allowed to ex-

press opinions when the subject-matter to which the testimony relates is such in its nature it cannot be reproduced and transcribed to the jury precisely as it happened at the time. Opinions may be given by non-expert witnesses as to the state of health, hearing or eyesight of another, or ability of another to work or walk or use his arms and legs naturally, or whether such other is apparently suffering pain, or is unconscious, in possession of his or her mental faculties, intoxicated, excited, calm, etc.''

From the reasoning of the courts, therefore, upon evidentiary situations analogous to the one involved in the instant case, it follows that the statement of the witness that no one was injured, when legally considered, was competent as a statement of fact. Certainly, it would be hypercritical, and a too rigorous interpretation of the opinion rule as to nonexperts to exclude such evidence.